479 A.2d 1081

COMMONWEALTH of Pennsylvania, Appellant,

v.

**Walter T. SMITH, Appellee.**

Superior Court of Pennsylvania.

Argued March 15, 1984.

Filed Aug. 10, 1984.

Petition for Allowance of Appeal Granted Jan. 22, 1985.

Laurence M. Kelly, District Attorney, Montrose, for Commonwealth, appellant.

Robert A. Mazzoni, Scranton, for appellee.

Before CAVANAUGH, WIEAND and CIRILLO, JJ.

WIEAND, Judge:

Where darkness, residual heat and dripping water make it difficult, if not impossible, to investigate the cause of a residential fire on the same night that the fire has been extinguished, may a fire marshall return the following morning and continue his investigation without a search warrant? The trial court held that he could not reenter the

fire-damaged building without a warrant and, therefore, suppressed evidence obtained by the fire marshall which tended to show that the fire had been of incendiary origin. The Commonwealth appealed. We reverse.

On the evening of June 28, 1982, a residence owned by Walter T. Smith and Cherry Lee Smith, husband and wife, in Great Bend, Susquehanna County, was found afire. Raymond Cobb, a member of the Pennsylvania State Police who also served as fire marshall in Susquehanna County, arrived at the fire while the home was still ablaze. He was told by the local fire chief that the origin of the fire seemed suspicious and was requested to determine the cause of the fire. After the fire had been extinguished at or about 9:30 p.m., Cobb found that he was unable to enter the premises and conduct an investigation because of residual heat and dripping water. Cobb told Mrs. Smith that he would come back to make his investigation at a later time. He returned the following morning at or about 9:00 a.m., when he entered to investigate and determine the cause of the fire. He did not then have a search warrant; he also did not have the owner's consent to enter the fire-damaged building. Nevertheless, he removed floor samples and took photographs of the interior and exterior of the building. The owner of the building, Walter T. Smith, was subsequently arrested and charged with arson. He moved to suppress evidence on grounds that Cobb had obtained the same as a result of an unlawful search. The trial court agreed, and suppressed all evidence thus obtained except photographs of the exterior of the building.

■ Initially, we observe that the Commonwealth has a clear right of appeal from the suppression order. The record supports its contention that the suppression of the evidence obtained by Cobb will substantially handicap it in its prosecution of Smith for arson. See: *Commonwealth v. Markman*, 320 Pa.Super. 304, 308 n. 1, 467 A.2d 336, 338 n. 1 (1983), citing *Commonwealth v. Lapia*, 311 Pa.Super. 264, 277, 457 A.2d 877, 884 (1983).

■■■ "The primary aim of the Fourth Amendment is to protect people from unreasonable intrusions of legitimate expectations of privacy." *Commonwealth v. Tann*, 500 Pa. 593, 598–599, 459 A.2d 322, 325 (1983). Accord: *Commonwealth v. Flewellen*, 475 Pa. 442, 446, 380 A.2d 1217, 1219 (1977); *Commonwealth v. Vernille*, 275 Pa.Super. 263, 272, 418 A.2d 713, 718 (1980). See: *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). As a general rule, with but few exceptions, warrantless searches are unreasonable. See: *Payton v. New York*, 445 U.S. 573, 586–587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980); *Commonwealth v. Silo*, 480 Pa. 15, 20, 389 A.2d 62, 65 (1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94 (1979); *Commonwealth v. Hartford*, 313 Pa.Super. 213, 217, 459 A.2d 815, 817 (1983); *Commonwealth v. Vernille, supra* 275 Pa.Super. at 272, 418 A.2d at 718. See also: *Commonwealth v. Westerfer*, 294 Pa.Super. 459, 462, 440 A.2d 556, 558 (1982). If reasonable privacy expectations remain in fire-damaged property, "the warrant requirement applies, and any official entry must be made pursuant to a warrant in the absence of consent or exigent circumstances." *Michigan v. Clifford*, 464 U.S. 287, ——, 104 S.Ct. 641, 646, 78 L.Ed.2d 477, 483 (1984).[1] Where the owner of the building consents to an official entry to investigate the cause of the fire, there is no longer any need for a search warrant, for reasonable expectations of privacy, if any, have been waived. *Commonwealth v. Markman, supra*. "A burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze." *Michigan v. Clifford, supra* at ——, 104 S.Ct. at 646, 78 L.Ed.2d at 483. Once in the building, officials need no warrant to remain for a

---

**1.** The opinion announcing the judgment of the Court was written by Justice Powell. He was joined by Justices Brennan, White and Marshall. Justice Stevens wrote a concurring opinion. The dissenting opinion written by Justice Rehnquist was joined by Chief Justice Burger and by Justices Blackmun and O'Connor.

"reasonable time to investigate the cause of a blaze after it has been extinguished." *Michigan v. Tyler*, 436 U.S. 499, 510, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486, 499 (1978) (footnote omitted).[2]

"The constitutionality of warrantless and nonconsensual entries onto fire-damaged premises ... normally turns on several factors: whether there are legitimate privacy interests in the fire damaged property that are protected by the Fourth Amendment; whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and, whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity." *Michigan v. Clifford, supra* ──── U.S. at ────, 104 S.Ct. at 646, 78 L.Ed.2d at 483. The validity of warrantless, nonconsensual entries by law enforcement officials—including fire personnel—has uniformly been upheld "when there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler, supra* 436 U.S. at 509, 98 S.Ct. at 1949, 56 L.Ed.2d at 498 (citing cases). See: *United States v. Velasquez*, 626 F.2d 314 (3rd Cir.1980); *United States v. Moskow*, 588 F.2d 882 (3rd Cir.1978); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978); *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 461 A.2d 616 (1983); *Commonwealth v. Henkel*, 306 Pa.Super. 346, 452 A.2d 759 (1982).

In *Michigan v. Tyler, supra,* the defendants argued that the exigency created by the blaze had terminated upon the suppression of the fire. Under this theory, a warrant would have been necessary for *all* searches occurring after containment of the fire. The Supreme Court of the United States disagreed. It found that the defendants' view of the fire-fighting function was "unrealistically narrow." The Court said:

**2.** In Pennsylvania, state police fire officials are charged by statute with responsibility for "investigat[ing] the origin or circumstances of any fire occurring in this Commonwealth." Act of April 27, 1927, P.L. 450, No. 291, §§ 2, 4, as amended, 35 P.S. §§ 1182, 1184. See: *Commonwealth v. Simkins*, 297 Pa.Super. 258, 265, 443 A.2d 825, 828–829 (1982).

Fire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional.

The respondents argue, however, that the Michigan Supreme Court was correct in holding that the departure by the fire officials from Tyler's Auction at 4 a.m. ended any license they might have had to conduct a warrantless search. Hence, they say that even if the firemen might have been entitled to remain in the building without a warrant to investigate the cause of the fire, their departure and re-entry four hours later that morning required a warrant.

On the facts of this case, we do not believe that a warrant was necessary for the early morning re-entries on January 22. As the fire was being extinguished, Chief See and his assistants began their investigation, but visibility was severely hindered by darkness, steam, and smoke. Thus they departed at 4 a.m. and returned shortly after daylight to continue their investigation. Little purpose would have been served by their remaining in the building, except to remove any doubt about the legality of the warrantless search and seizure later that same morning. *Under these circumstances, we find that the morning entries were no more than an actual continu-*

*ation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence.*

*Id.* 436 U.S. at 510–511, 98 S.Ct. at 1950–1951, 56 L.Ed.2d at 498–499 (emphasis added) (footnote omitted).

█ The narrow issue in the instant case is whether the exigent circumstances existing at the time of the fire continued to exist when Trooper Cobb returned to the structure at 9:00 a.m., after the fire had been extinguished on the prior evening, so as to permit him to enter reasonably without a warrant to determine the cause of the fire. We hold that Cobb's re-entry was a continuation of his prior, necessary entry.

In *Tyler*, the fire officials had been at the scene of the fire when it was suppressed at or about 4:00 a.m. After entering the building briefly, they had departed and left the building unattended. They returned at or about 8:00 a.m. to make a cursory examination. They left once again and returned in an hour to take samples of the flooring which had not been visible when they were first on the scene because of heat, steam and darkness. The circumstances of the case *sub judice* are similar. Trooper Cobb testified without contradiction that he had not entered the building after the fire was extinguished because of heat and dripping water. It may also be observed that his examination of the interior of the building at 9:30 p.m. would have been hampered greatly by darkness. Therefore, Cobb returned the following morning to conduct his investigation as to the origin of the fire. Although Cobb returned at a slightly later hour of the morning than the fire chief in *Tyler*, this difference is factually and legally insignificant.[3] His return on the morning after the fire had been doused, was a continuation of the right to enter lawfully in order to investigate the cause of the fire.

**3.** Cobb's uncontradicted testimony was that he returned to the scene of the fire at or about 9:00 a.m. There is no support in the record for the finding made by the suppression court and echoed in appellee's arguments that Cobb returned at or about 10:00 a.m. Cobb stated only that the flooring samples had been taken at about 10:00 a.m., an hour after his arrival.

The result which we reach is not precluded by the decision in *Michigan v. Clifford, supra.* In that case, the property owners secured their damaged residence[4] after the fire had been extinguished, and personal belongings remained in the home. Arson investigators, who had not been present during the fire, arrived at 1:00 p.m. on the following afternoon and effected a warrantless, nonconsensual entry and search. In view of the fact that the premises had theretofore been secured, the Supreme Court concluded that there were no exigent circumstances requiring entry without a warrant. In the instant case, Cobb had been present at the time of the fire; and, because of darkness, residual heat and water, he was unable to make an immediate investigation regarding the cause of the fire. The fire-damaged premises had not been secured. Cobb's investigation, therefore, could be continued on the following morning. He could do so without first acquiring a warrant based on probable cause to believe that the owner had intentionally set the fire.

Reversed and remanded for trial. Jurisdiction is not retained.

CIRILLO, J., filed a dissenting opinion.

CIRILLO, Judge, dissenting:

I dissent. The primary object of Officer Cobb's warrantless search was to gather evidence of criminal activity, not to determine the cause and origin of the recent fire. Therefore, a warrant was required showing probable cause to search the appellees' premises. Since the appellees did not give their consent to the warrantless search, and there were no exigent circumstances involved, the appellees' fourth amendment rights were violated, and the evidence obtained must be suppressed.

Exigent circumstances exist when fire officials enter a home to fight a fire. *Michigan v. Clifford,* 464 U.S. 287,

**4.** Although the lower interior of the structure had been extensively damaged, the exterior of the home and the upstairs rooms were largely undamaged by the fire.

104 S.Ct. 641, 78 L.Ed.2d 477 (1984). After the fire is extinguished fire officials may remain inside the premises for a reasonable period of time to investigate its cause and origin. *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 461 A.2d 616 (1982). Such investigations constitute a continuation of the first legal warrantless entry, and do not violate the fourth amendment to the Constitution since a compelling public interest is served in determining the cause and origin of fires. *Tyler*, 436 U.S. at 509, 98 S.Ct. at 1951, 56 L.Ed.2d at 498.

However, if the primary object of a warrantless search is not to determine a fire's cause, but to gather evidence of criminal activity, a continuation does not exist and it is necessary to obtain a criminal search warrant demonstrating probable cause to believe that relevant evidence will be found in the place to be searched. *Clifford*, 464 U.S. at ——, 104 S.Ct. at 649, 78 L.Ed.2d at 484.

Did Officer Cobb enter the appellees' burned premises to determine the cause and origin of the fire, thereby justifying a warrantless entry of the appellees' home, or did he gain entrance to gather evidence of criminal activity, thereby triggering the appellees' fourth amendment rights?

I believe the facts show that Officer Cobb entered the appellees' home to gather evidence of criminal activity. At the suppression hearing under cross-examination, Officer Cobb testified that the fire chief told him that the fire was suspicious in origin. S.T. 11. The fire chief thought the fire suspicious because the electricity had been turned off. *Id.* at 12. Cobb further stated that the term "suspicious in origin" usually referred to an arson fire. *Id.* Cobb himself suspected arson. *Id.* at 13. Cobb's testimony supports the inference that he entered the appellees' home to search for evidence of arson.

More than twelve hours elapsed from the time the firemen extinguished the blaze to the time when Officer Cobb conducted his warrantless search. Cobb could have easily obtained a warrant from a magistrate on the way to the

appellees' premises. In fact, Cobb testified that he travelled right past the magistrate's office on his way to make the warrantless search.

Since Officer Cobb's search was conducted without a valid warrant, without the consent of the appellees, and without the exigent circumstances necessary to support a warrantless search, it was invalid under the fourth and fourteenth amendments. Any evidence obtained as a result of this entry must, therefore, be excluded at the appellees' trial.

The majority's holding to the contrary allows fire officials to circumvent the warrant requirement by making every investigation into criminal activity at the scene of a fire an investigation of the cause and origin of the fire. The Supreme Court in *Tyler* and *Clifford* did not intend to further erode the warrant requirement of the Constitution in the manner accomplished by the holding of the majority in the present case.

I would affirm the suppression order of the trial court.