511 A.2d 796

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Walter T. SMITH, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1985.

Decided June 23, 1986.

Robert A. Mazzoni, Paul R. Mazzoni, Scranton, Michael Giangrieco, Montrose, for appellant.

Laurence M. Kelly, Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS,* Justice.

At about 8:00 p.m. on June 28, 1982, Appellant's residence was on fire when Raymond Cobb, a member of the Pennsylvania State Police, happened onto the scene. In addition to his highway duties, Officer Cobb was the Fire Marshall of Susquehanna County. As such, Officer Cobb was required to investigate any fire and determine its cause and origin. On the night in question, after the fire had been extinguished (somewhere between 9:00 p.m. and 9:30 p.m.) the local fire chief requested Officer Cobb's assistance in determining the cause of the fire. The electricity in the house in question had been turned off all day giving rise to the suspicion of arson. Neither Officer Cobb nor the chief

---

* This case was reassigned to this writer on March 13, 1986.

undertook to pursue their investigation at that time because entry into the premises was blocked by residual heat and dripping water. Darkness had also fallen. They decided to glance into the residence through a doorway and then departed the scene. At 9:00 a.m. the next day, Officer Cobb returned to investigate the premises, photographs were taken and floor and carpet samples were extracted from the first floor of Appellant's residence. Officer Cobb conducted his investigation without first obtaining a warrant.

Appellant was thereafter arrested and charged with arson[1] and risking a catastrophe.[2] Appellant filed a timely motion to suppress the evidence obtained by Officer Cobb on June 29, 1982. A hearing was held during which Appellant, his wife and Officer Cobb testified. In addition to the uncontroverted facts set forth above, at the suppression hearing, the Commonwealth attempted to establish that either Appellant or his wife gave Officer Cobb permission to search the residence. The suppression court found to the contrary, holding that the statement of Appellant's wife at the scene the night of the fire, "was too confused to find that she had granted permission to enter and search the building to anybody" (R. 25). The court also found that on the day after the fire Officer Cobb had already entered Appellant's residence without permission before Appellant appeared on the scene and offered assistance to him. The suppression court concluded that Officer Cobb's search was constitutionally infirm and ordered the suppression of all the obtained evidence.

An appeal was filed by the Commonwealth to Superior Court[3] which, in a 2–1 decision, reversed the suppression court. (Cavanaugh and *Weiand,* JJ.; Cirillo, J. dissenting), 331 Pa.Super. 66, 479 A.2d 1081. In so doing, Judge Weiand, writing for the majority, held that exigent circum-

1. 18 Pa.C.S.A. § 3301(b)(c).

2. 18 Pa.C.S.A. § 3302.

3. This interlocutory appeal is permissible under *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985), and *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963).

stances existed at the time of the fire, and that they continued to exist when Officer Cobb returned the next day, thus justifying a finding that a continuous entry existed against Appellant's property. Because of the late hour, and the remaining heat and water, Officer Cobb was held to have continued his warrantless investigation properly the next morning. Contrary to the Majority's determination, Judge Cirillo concluded that the primary object of Officer Cobb's warrantless search was to gather evidence of criminal activity, not to determine the cause and origin of the recent fire. Therefore, the dissent is of the view that the "exigent circumstance" exception was not applicable.

The Fourth and Fourteenth Amendments[4] to the United States Constitution protect citizens from "unreasonable searches and seizures." Those amendments also require an independent determination of probable cause and reasonableness prior to the issuance of a search warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The United States Supreme Court has, however, carved out exceptions to the requirement of a search based upon a warrant. For example, an individual's consent will obviate the necessity of obtaining a search warrant. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Likewise, "exceptional" circumstances may exist which will require immediate action rather than seeking a prior judicial determination of probable cause. In those "exceptional" circumstances, a law enforcement agent seeking to conduct a warrantless search may do so if incident to a lawful arrest or to prevent destruction or removal of contraband. *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). If so, a warrantless search is valid so long as that search is reasonable.

Particularly relevant to this appeal, the United States Supreme Court has held that a fire official may, without a warrant enter a burning building to fight a fire. A burning building presents a clear exigency that renders a warrant-

---

**4.** No State Constitutional issues are raised in this appeal.

less entry reasonable and, once in the building, firefighters may seize evidence of arson that is in plain view and they may investigate the cause of the fire. *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Under what circumstances, then, may a fire marshall not conduct an investigation without a search warrant, where consent has not been properly obtained? To answer this question, it is necessary to review in detail the two most recent United States Supreme Court cases on the subject.

In *Tyler,* the United States Supreme Court attempted to resolve the issue of when a fire marshall may conduct a nonconsenting, warrantless search. While fighting a fire at the defendant's furniture store, fire officials found two plastic containers of flammable liquid. Immediately, the fire chief examined the containers and summoned a police detective to assist in his investigation to determine the origin and cause of the fire. This investigation had to be abandoned due to the smoke and steam present in the building. By 4:00 a.m., the fire had been extinguished and the firefighters had departed. At 8:00 a.m., the same fire officials, along with the assistant fire chief who had not been there previously,[5] again appeared on the scene to determine the origin and cause of the fire. After a cursory examination, the officials left and returned for a third time an hour later. During this last visit, the fire officials obtained various floor and carpeting samples. Approximately three weeks later, another police official visited the furniture store, took photographs, and conducted a more thorough search of the premises. At no time did any police or fire official obtain a search warrant or have the owner's consent.

■ In upholding the warrantless search conducted the next morning, the Supreme Court found as a significant factor the difficulty the fire officials encountered in continuing the initial investigation undertaken while fighting the

---

5. See, *Michigan v. Clifford,* 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984), Justice Steven's concurring opinion, footnote 2. This case is discussed below.

fire to determine its cause and origin. The majority further held that since a burning building presents an exigent circumstance sufficient to justify a fireman's entry into the building for the purpose of terminating the fire, any search incident thereto cannot be unreasonable. Because firefighters not only have a duty to extinguish the fire, but also have a duty to determine the cause of the fire, as a protection against reoccurrence, no search warrant or consent is necessary if any such investigation occurs promptly. The Court said:

> ... [O]fficials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional. (footnote omitted)

436 U.S. 510, 98 S.Ct. 1950. In *Tyler*, the firemen did not remain at the scene to complete their investigation on the night of the fire because of physical impediments, but returned the next morning. Since the Court found no fault in leaving the damaged building, the Court determined that the warrantless search the next morning was merely a continuation of the properly initiated investigation.

> Under the circumstances, we find that the morning entries were no more than actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence.

436 U.S. 511, 98 S.Ct. 1951. The Court, however, did invalidate subsequent warrantless searches as being detached from the "initial exigency and warrantless entry." *Id.*

Six years later, the United States Supreme Court attempted "to clarify doubt that appears to exist as to the application of our decision in *Tyler*," in *Michigan v. Clifford*, 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984).

In *Clifford*, the defendants were arrested and charged with arson in connection with a fire at their residence,

occurring on October 18, 1980, while they were on vacation. By 7:00 a.m., the fire had been extinguished. Having been informed that arson was suspected, the fire investigator commenced his investigation of the fire at 1:00 p.m. without either a search warrant or the defendants' consent. Since a work crew was securing the house, the fire investigator had to wait until 1:30 p.m. to gain entry. While awaiting entry, the investigator found a fuel can in the driveway. Upon entry into the house, the investigator determined that the fire originated in the basement beneath the stairway. Further investigation uncovered other fuel cans and a crock pot with wires leading to an electrical timer. Thereafter, the investigating team conducted a thorough examination of the remainder of the house, parts of which had not suffered serious damage, gathering other evidence to support its suspicion of arson. The Cliffords moved to suppress all evidence seized as invalid under the Fourth and Fourteenth Amendments.

A majority of the United States Supreme Court upheld the supression of the evidence although no clear majority opinion was filed. Justice Powell writing for the four member plurality stated that:

The constitutionality of warrantless and nonconsentual entries onto fire-damaged premises, therefore, normally turns on several factors: whether there are legitimate privacy interests in the fire-damaged property that are protected by the Fourth Amendment, whether exigent circumstances justify the government intrusion regardless of any reasonable expectation of privacy; and, whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity.

464 U.S. 292, 104 S.Ct. 646. Reaffirming *Tyler,* Justice Powell stated that a burning building creates an exigent circumstance which justifies not only a warrantless entry by fire officials to fight the blaze, but also requires no warrant for fire officials to *remain* in the building for a reasonable time thereafter to investigate the *cause* of the blaze. Justice Powell points out, however, that firemen

fighting a fire frequently do not *remain* within a building once they enter. He points out that in many situations, entry may be too hazardous until the fire has been wholly extinguished and that even then the danger of collapsing walls may exist. Thus, the effort to ascertain the cause of a fire may extend over a period of time with entry and re-entry. He views the critical inquiry, therefore, as being whether reasonable expectations of privacy exist in the fire-damaged premises at a particular time and, if so, whether exigencies justify the re-entries.[6] The aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain a warrant or to secure the owner's consent. For example, an immediate threat that the blaze might rekindle presents an exigency that would justify a warrantless and nonconsensual post-fire investigation. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction.[7] Because determining the cause and origin of a fire serves a compelling public interest, the warrant requirement does not apply in such circumstances.

■ However, if the nonconsensual search, compelled by exigent circumstances, is not for the purpose of determining the cause and origin of the fire, an appropriate search warrant is required. Justice Powell stated:

The object of the search is important even if exigent circumstances exist. Circumstances that justify a warrantless search for the cause of a fire may not justify a search to gather evidence of criminal activity once that cause has been determined.

464 U.S. 294, 104 S.Ct. 647.

■ Reading *Tyler* and *Clifford* together, certain principles regarding the Fourth Amendment and investigations of the causes and origins of fire are clear. Firemen have the right to enter a private residence without a warrant without violating the Fourth and Fourteenth Amendments of the United States Constitution, if done so for the purpose

6. See, *Clifford, supra,* footnote 3 of Justice Powell's opinion.
7. See, *Clifford, supra,* footnote 4 of Justice Powell's opinion.

of extinguishing a fire. While performing the task, firemen may seize any evidence, which is in plain view, of the cause and origin of the fire. In fighting the fire, fire officials are also immediately charged with determining the cause and origin of the fire. The purposes of the investigation into the cause and origin of the fire may properly include prevention of the rekindling of the fire, and prevention of the destruction of evidence, either accidentally or intentionally. When the search is conducted for one of these purposes, no search warrant is necessary, even if consent has not been granted, but only if the search is a continuation of an initial entry. If the nonconsenting, warrantless entry is begun, but must be terminated due to the condition of the building, then that search may be continued at the first instance reentry is possible. Finally, if it is clearly shown that the search is not for the purpose of determining the cause and origin of the fire, but rather to obtain evidence of criminal activity, then such search must either be with consent or with a valid search warrant.

Applying these principles to the present case, it is apparent that the evidence should not be suppressed. From the testimony of Officer Cobb, one can only conclude that the purpose of the search the morning after the fire was to determine its cause and origin. Officer Cobb did not enter the building to investigate the cause of the fire on the evening it occurred because he looked into the building and "saw that the place was extremely hot yet and a large amount of water was coming down through the ceiling and also it was late in the evening." N.T. at 3. *There is nothing on the record before us,* nor even a suggestion by Appellant in his brief, that Officer Cobb, or anyone else, knew at this time what the cause or origin of the fire was. Indeed, the *only thing* that fire officials knew or had reason to believe on the evening of the fire and the next morning was that electricity was *not* the cause of the fire and that, since no other cause was *apparent,* the fire was "suspicious in nature." N.T. at 11–13.

We do not ascribe critical importance to Officer Cobb's "suspicions of arson." A mere suspicion without more—which is *all* that there was in this case on the morning after the fire at 9:00 a.m.—does not convert an investigation of the cause of a fire into a search to gather evidence of criminal activity known to have taken place. On the basis of what Officer Cobb knew on the morning in question, it is clear that he had only a suspicion, and mere suspicions do not constitute probable cause to support a search warrant. Since an exigent circumstance existed, that is the need to discover the origin of the fire, a warrantless entry or re-entry was permitted.

The final question that remains, therefore, is whether the re-entry here on the morning after the fire was put out, was a continuation of an original entry. We conclude that like *Tyler,* and unlike *Clifford,* the re-entry here *was* a continuation of an original entry, and that it occurred at the first reasonable opportunity to do so. Essentially, Officer Cobb's entry or re-entry was a continuation of the entry by the firefighters the evening before. Even if it could reasonably be contended that Officer Cobb was a different investigator, separate and distinct from the firemen, and that his entry the next morning was somehow not continuous with that of the firemen the night before (a contention which we reject), Appellant's argument must nevertheless fail. While the United States Supreme Court did state in *Tyler* that "the morning entries were no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence," 436 U.S. at 511, 98 S.Ct. at 1951, the constitutional importance of this finding lies not simply in the fact that an investigation once begun may continue at a later time, but in the fact that there is an exigent need to determine the cause of a fire and that if conditions prevent fire investigators from making an immediate cause determination, the investigation may be made or continue at the first reasonable opportunity to do so after dousing the flames. A fire creates an exigent need

to put it out, of course, and it also creates a vital need to ascertain the cause.

Where conditions such as "darkness, steam and smoke" prevent the investigators from completing their investigation, the exigency—the need to find the cause—remains. This exigency is exactly the same whether the fire officials first start to investigate by actually entering the building and then break-off the investigation due to adverse conditions, or whether, as in the instant case, the conditions (intense heat, water and darkness) prevented specific investigators from themselves entering in the first place. In either event, the cause of the fire remains undetermined until an investigator discovers its origin. We reject the argument based on *Tyler* to the effect that Officer Cobb's search would have been a "good search" had he but first entered the building the previous night before deciding it was too hot, wet and dark to conduct an investigation, and then left, but because he simply stood outside the building and, based on personal observation, years of experience as a fire marshall, and common sense, decided that it would be wise to return the first thing in the morning to start the investigation, that it was a "bad search." It is obvious that such a "distinction" between this case and *Tyler* is one without difference and one which has little or no relevance to the validity of the fire investigation.

We do not hold that a fire authorizes a search for all times thereafter. But an investigation the first thing on the morning after, utilizing daylight, is a reasonable and necessary exercise of prudence both to be certain the fire is out and the cause determined. "Exigency" is a reasonable standard when reasonably determined, and circumstances are the determining factor. "Reasonable expectations of privacy" cannot be expected to defeat wind, flood, ice and fire. When flames leap from a building from the most innocent or most malicious cause, all expectations of privacy are lost in an immediate public concern for life and property. That concern does not end until the fire is out *and* its cause has been determined within prompt, reasonable, ra-

tional, life-preserving periods of time, under the different and extraordinary exigencies caused by fire. It would be a mistake to declare that the morning after is too late. Arsonists might then take note and carefully control their fires to burn before the morning light. The use of a carefully planted timer was suggested in *Clifford, supra.*

Likewise, to hold that the evidence obtained by Officer Cobb should be suppressed because he was suspicious when he went to the fire ground the morning after and that he should, therefore, have had a warrant, is unreasonable under the circumstances, creating unrealistic time sanctuary for clever arsonists, who the morning after, can whistle while they hide what the dark concealed a few hours before.

For the reasons set forth above, the judgment of the Superior Court is affirmed.

LARSEN, McDERMOTT and HUTCHINSON, JJ., join in this opinion.

LARSEN, J., filed a concurring opinion in which HUTCHINSON, J., joined.

ZAPPALA, J., filed a dissenting opinion in which NIX, C.J., and FLAHERTY, J., joined.

LARSEN, Justice, concurring.

I join the majority opinion. The warrantless, non-consensual search and seizure of evidence by Officer/Fire Marshall Cobb on the morning after the fire had been extinguished is *constitutionally and logically indistinguishable* from the morning-after search and seizure of evidence by fire investigators that received the approval of the United States Supreme Court in *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). I write separately to address the dissent's erroneous proclamation that "the majority has etched a new justification for a warrantless search." At 804.

There is nothing at all "new" about the justifications, *i.e.*, the exigent circumstances justifying a warrantless search and seizure, that were recognized by the United States Supreme Court in *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), and reaffirmed by that Court in *Michigan v. Clifford,* 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984). The dissent seems to believe that *Tyler* recognized only a single exigent circumstance, namely the fighting of a fire and prevention of "the possibility of rekindling" by determining "the cause of the fire as a protection against reoccurrence...." At 804, and 805.

This exceedingly narrow view of *Tyler* —that the exigent need to determine the cause and origin of the fire is over the instant the fire is out and there is no possibility of its rekindling [1]—ignores *Tyler's* reasoning and explicit language to the contrary. In *Tyler,* the United States Supreme Court, in reversing the Michigan Supreme Court, stated:

> [The opinion of the] Michigan Supreme Court ... may be read as holding that the exigency justifying a warrant-less entry to fight a fire ends, and the need to get a warrant begins, with the dousing of the last flame. 399 Mich [564], at 579, 250 NW2d [467], at 475. *We think this view of the firefighting function is unrealistically narrow, however. Fire officials are charged not only with extinguishing fires, but with finding their causes.* Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. *Immediate investigation may also be neces-*

---

1. The dissent is convinced that, at 9:00 a.m. on the morning after the fire at appellant's home, there was no possibility of its "reoccurrence" or "rekindling" because the electricity had been shut-off and because of the "twelve hour time lapse between the extinguishing of the fire and the search...." At 807. A fire official would, it seems to me, be remiss in his duties if he were to reach such a conclusion based solely on the fact that twelve hours had elapsed and electricity had been shut-off. I, for one, would be most reluctant to rehabitate my residence knowing only what fire officials in the instant case knew at 9:00 a.m. on the morning after.

*sary to preserve evidence from intentional or acciden-tal destruction.* And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises *for these purposes* also is constitutional.

*Id.* 436 U.S. at 509–510, 98 S.Ct. at 1950 (emphasis added).

There was no real dispute with these principles. The major issue in *Tyler* was with their application to the morning-after searches and seizures conducted to determine the origins of the fire and to obtain evidence of the suspected arson. The defendants argued that the Michigan Supreme Court was correct in viewing any "exigency" as over at 4:00 a.m. when firefighters and investigators left the scene and that their "departure and re-entry four hours later that morning required a warrant." Justice Stewart, expressing the views of five members of the Court, stated:

On the facts of this case, we do not believe that a warrant was necessary for the early morning re-entries on January 22. As the fire was being extinguished, Chief See and his assistants began their investigation, but visibility was severely hindered by darkness, steam, and smoke. Thus they departed at 4 a.m. and returned shortly after daylight to continue their investigation. Little purpose would have been served by their remaining in the building, except to remove any doubt about the legality of the warrantless search and seizure later that same morning. *Under these circumstances, we find that the morning entries were no more than an actual continu-*

*ation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence.*

*Id.* at 511, 98 S.Ct. at 1950 (emphasis added).[2]

*Tyler* clearly controls the instant case and validates the morning-after search and seizure of evidence by Officer Cobb under the circumstances. The exigent circumstances recognized in *Tyler* as justification for a warrantless search and seizure were the need to extinguish the fire and the need to determine its cause and origin not only to prevent rekindling but also "to preserve evidence from intentional or accidental destruction," and these exigencies continued to exist even where the investigation was broken off due to adverse conditions and resumed a reasonable time thereafter. Those same exigent circumstances were present in equal force in the instant case.

HUTCHINSON, J., joins in this concurring opinion.

ZAPPALA, Justice, dissenting.

I dissent.

Today the majority has etched a new justification for a warrantless search. Now when a fire investigator cannot obtain a search warrant for lack of probable cause, we will permit him to search under the guise of discovering the *cause* and *origin* of the fire. This is so even if the exigency which previously supported this intrusion (i.e. possibility of rekindling) no longer exists.[*]

The Fourth and Fourteenth Amendments [1] to the United States Constitution protect citizens from "unreasonable

---

**2.** The Court affirmed the Michigan Supreme Court's grant of a new trial, however, because of the subsequent searches and seizures. The Court held:

> The entries occurring after January 22, however, were clearly detached from the initial exigency and warrantless entry. Since all of these searches were conducted without valid warrants and without consent, they were invalid under the Fourth and Fourteenth Amendments, and any evidence obtained as a result of those entries must, therefore, be excluded at the respondents' retrial.

[*] The following opinion was originally circulated as a proposed majority opinion and is now being resubmitted as my dissent. It appears that the majority has adopted verbatim the legal analysis and rationale of this dissent. (See majority opinion pp. 40–47).

**1.** No State constitutional issues are raised in this appeal.

searches and seizures." Those amendments also require an independent determination of probable cause and reasonableness prior to the issuance of a search warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The United States Supreme Court has, however, carved out exceptions to the requirement of a search based upon a warrant. For example, an individual's consent will obviate the necessity of obtaining a search warrant. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Likewise, "exceptional" circumstances may exist which will require immediate action rather than seeking a prior judicial determination of probable cause. In those "exceptional" circumstances, a law enforcement agent seeking to conduct a warrantless search may do so if incident to a lawful arrest or to prevent destruction or removal of contraband. *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). If so, a warrantless search is valid so long as that search is reasonable.

Particularly relevant to this appeal, the United States Supreme Court has held that a fire official may enter a burning building under an emergency doctrine to fight the fire. *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Under what circumstances, then, may a fire marshall conduct an investigation without a valid search warrant, where consent has not been properly obtained. To determine this issue, it is important to review in detail the two most recent United States Supreme Court cases regarding this issue.

In *Tyler*, the United States Supreme Court attempted to resolve the issue of when a fire marshall may conduct a nonconsenting, warrantless search. While fighting the fire at the defendant's furniture store, fire officials found two plastic containers of flammable liquid. Immediately, the fire chief examined the containers and summoned a police detective to assist in his investigation to determine the origin and cause of the fire. This investigation had to be abandoned due to the smoke and steam present in the building. By 4 a.m., the fire had been extinguished and the

fire fighters had departed. Four hours later, the same fire officials again appeared on the scene to determine the origin and cause of the fire. After a cursory examination, the officials left and returned for a third time an hour later. During this last visit, the fire officials obtained various floor and carpeting samples. Approximately three weeks later, another police official visited the furniture store, took photographs, and conducted a more thorough search of the premises. At no time did any police or fire official obtain a search warrant or have proper consent.

In upholding the warrantless search conducted the next morning, the Supreme Court found as a significant factor, the difficulty the fire officials encountered in continuing the initial investigation undertaken while fighting the fire to determine its cause and origin. The majority further held that since a burning building presents an exigent circumstance sufficient to justify a fireman's entry into the building for the purpose of terminating the fire, any search incident thereto cannot be unreasonable. Because firefighters not only have a duty to extinguish the fire, but also have a duty to determine the cause of the fire, as a protection against reoccurrence, no search warrant or consent is necessary if any such investigation occurs promptly. The Court said:

> ... [O]fficials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional. (footnote omitted)

436 U.S. 510, 98 S.Ct. 1950. In *Tyler*, the firemen did not remain at the scene to complete their investigation on the night of the fire because of physical impediments, but returned the next morning. Since the Court found no fault in leaving the damaged building, the Court determined that the warrantless search the next morning was merely a continuation of the properly initiated investigation.

Under the circumstances, we find that the morning entries were no more than actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence.

436 U.S. 511, 98 S.Ct. 1951. The Court, however, did invalidate subsequent warrantless searches as being detached from the "initial exigency and warrantless entry." *Id.*

Six years later, the United States Supreme Court attempted "to clarify doubt that appears to exist as to the application of our decision in *Tyler*," in *Michigan v. Clifford*, 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984).

In *Clifford*, the defendants were arrested and charged in connection with a fire at their residence, occurring on October 18, while they were on vacation. By 7 a.m., the fire had been extinguished. Having been informed that arson was suspected, the fire investigator commenced his investigation of the fire at 1 p.m. without either a search warrant or the Appellant's consent. Since a work crew was securing the house, the fire investigator had to wait until 1:30 p.m. to gain entry. While awaiting entry, the investigator found a fuel can in the driveway. Upon entry into the house, the investigator determined that the fire originated in the basement beneath the stairway. Further investigation uncovered other fuel cans and a crock pot with wires leading to an electrical timer. Thereafter, the investigating team conducted a thorough examination of the remainder of the house, gathering other evidence to support its suspicion of arson. The Cliffords moved to suppress all evidence seized as invalid under the Fourth and Fourteenth Amendments.

A majority of the United States Supreme Court upheld the suppression of the evidence although no clear majority opinion was filed. Justice Powell writing for four members of the majority stated that:

The constitutionality of warrantless and nonconsensual entries onto fire-damaged premises, therefore, normally turns on several factors: whether there are legitimate

privacy interests in the fire-damaged property that are protected by the Fourth Amendment; whether exigent circumstances justify the government intrusion regardless of any reasonable expectation of privacy; and, whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity. 464 U.S. 292, 104 S.Ct. 646. Reaffirming *Tyler*, Justice Powell stated that a burning building creates an exigent circumstance which justifies not only a warrantless entry by fire officials to fight the blaze but permits fire officials to remain in the building for a reasonable time thereafter to investigate the *cause* of the blaze. As in *Tyler*, Justice Powell opined that the aftermath of a fire often presents exigent circumstances which require immediate investigation to protect the public interests. In that situation no warrant is necessary. However, if the nonconsenting search is not compelled by exigent circumstances or if the object of that search is not to determine the cause and origin of the fire, the appropriate search warrant is required. Justice Powell stated:

> Circumstances that justify a warrantless search for the cause of a fire may not justify a search to gather evidence of criminal activity once that cause has been determined. If, for example, the administrative search is justified by the immediate need to ensure against rekindling, the scope of the search may be no broader than reasonably necessary to achieve its end. A search to gather evidence of criminal activity not in plain view must be made pursuant to a criminal warrant upon a traditional showing of probable cause.

464 U.S. 294, 104 S.Ct. 647.

In distinguishing *Clifford* from *Tyler*, Justice Powell placed great weight on the fact that *no search* had been commenced in *Clifford* at the time the fire had been extinguished, while in *Tyler*, the fire officials started their investigation only to be thwarted by uncontrollable elements. Thus, *Tyler's* warrantless search was permissible as a reasonable continuation of a proper warrantless search

while in *Clifford* the warrantless search could not be upheld as a continuation since no search had begun at the time the fire was extinguished.

In his opinion concurring in the judgment of the court, Justice Stevens raises another relevant factor in distinguishing *Clifford* from *Tyler.* In *Tyler,* the fire officials conducting the search the day after the fire was extinguished were the same fire officials that attempted to search the building the night of the fire. This was not the case in *Clifford.* Therefore, there could be no continuation of the previously conducted search. Furthermore, Justice Stevens would hold that once the firemen have left the scene of the fire, the exigent circumstances justifying a warrantless search to prevent re-occurrence would cease, thereby requiring adherence to the Fourth and Fourteenth Amendments. However, unlike Justice Powell, Justice Stevens would hold that any entry into a building subsequent to extinguishing a fire would require a criminal search warrant unless the owner had received sufficient notice of the proposed search.

> ... I believe the two clauses of the Fourth Amendment command-would require the fire investigator to obtain a traditional criminal search warrant in order to make an unannounced entry, but would characterize a warrantless entry as reasonable whenever the inspector had given either the owner sufficient advanced notice to enable him or an agent to be present, or had made a reasonable effort to do so. (footnote omitted)

464 U.S. 303, 104 S.Ct. 652. Since the Cliffords had not received actual advance notice of the search, nor had the fire officials even attempted to so notify them, Justice Stevens would find the warrantless search unreasonable and violative of the Fourth Amendment.

Finally, the four dissenting Justices would have held that the Cliffords had no expectation of privacy because they were away, and that the intrusion by the fire inspector was neither "new or substantially different intrusion from that which occurred when the fire fighters first arrived to extin-

guish the flames" and that the subsequent search was merely a continuation of the original entry. 464 U.S. 308, 104 S.Ct. 655. Thus, the search was reasonable and not violative of the Fourth Amendment.

Reading *Tyler* and *Clifford* together, certain principles regarding the Fourth Amendment and investigations of the causes and origins of fires are clear. Firemen have the right to enter a private residence without a warrant without violating the Fourth and Fourteenth Amendments of the United States Constitution if done so for the purpose of extinguishing a fire. While performing the task, firemen may seize any evidence, which is in plain view, of the cause and origin of the fire. In addition to fighting the fire, fire officials are charged with determining the cause and origin of the fire. The purpose of the investigation into the cause and origin of the fire is to prevent rekindling of the fire. When the search is conducted for this purpose, then no search warrant is necessary even if consent has not been granted, but only if the search is a continuation of the initial entry. If the nonconsenting, warrantless search into the cause and origin of the fire is begun, but must be terminated due to the condition of the building, then that search may be continued at the first instance reentry is permissible. Finally, if it is clearly shown that the search is not for the purpose of determining the cause and origin of the fire, but rather to obtain evidence of criminal activity, then such search must either be with consent or with a valid search warrant.

Applying these principles to the present case, it is apparent that the evidence must be suppressed. From the testimony of Officer Cobb, one can only conclude that the purpose of the search the morning after the fire was to obtain evidence of arson. The fact that the electricity in the house had been turned off the day of the fire supported Officer Cobb's suspicion of arson. Because of the twelve hour time lapse between the extinguishing of the fire and the search, it is abundantly clear that the likelihood of the fire rekindling was minimal. Therefore, the exigency which

supported the initial entry abated by the next morning when Officer Cobb conducted his search. Likewise, since Officer Cobb, by his own admission, never entered the building the night of the fire, justification for the search the next day cannot be found in the "continuation" theory set forth in *Tyler*. Thus, the nonconsenting search and ultimate seizure of evidence was violative of the Fourth and Fourteenth Amendments and cannot be sustained.[2]

For the foregoing reasons, I would reverse the order of the Superior Court and reinstate the order of the Court of Common Pleas of Susquehanna County.

NIX, C.J., and FLAHERTY, J., join in this dissenting opinion.

---

**2.** The trial court specifically found that the Appellant's wife did not consent to the search and the Commonwealth presents no evidence or argument to refute this finding. My independent review of the record supports this determination by the Suppression Court.