STATE

v.

Timothy HOFFMAN.

No. 88–468–C.A.

Supreme Court of Rhode Island.

Jan. 4, 1990.

James E. O'Neil, Atty. Gen., Jane McSoley, Sp. Asst. Atty. Gen., for plaintiff.

John Cicilline, Providence, for defendant.

OPINION

KELLEHER, Justice.

This is the state's appeal from the grant by a Superior Court justice of the defendant's motion to suppress certain evidence seized by personnel of the Office of the State Fire Marshal, the East Greenwich Fire District, and the East Greenwich police department as a result of an explosion and a fire that occurred at the defendant's home. The defendant has been charged with the commission of first-degree arson in that he did knowingly cause, procure, aid, counsel, and create by means of fire and explosion, damage to his residence, a violation of G.L.1956 (1981 Reenactment) § 11–4–2, as amended by P.L.1983, ch. 185, § 1. Hereafter we shall refer to the defendant, Timothy Hoffman, by his last name.

The record indicates that on November 9, 1985, sometime around midnight, an explosion occurred at Hoffman's residence, located on First Avenue in East Greenwich. The residence was a single-family dwelling usually called a ranch house. The upper level of the residence was the family's living area. It contained bedrooms, a bath, a living room, a kitchen, and a porch. Entry to the basement area was through the kitchen. The basement area contained a heating room, a garage, an office used by Hoffman, and a laundry area. Situated in the heating room was an oil-burning fur-

nace that supplied heat and a gas hot-water heater.

The damage caused by the explosion might be described as catastrophic. The entire rear wall of the premises was blown away with the wall framing ripped out from the foundation to the floor joist. The picture window from the front of the house was found on the front lawn. The house had been moved from its foundation. The garage door was discovered approximately seventy feet away from its original location. The interior walls of the basement were blown to the ground by the force of the explosion.[1] In the examination of the cellar, the investigators observed above the furnace a twenty-four-hour timer clock that was affixed to a joist supporting the first floor. An examination of the face of the clock revealed that the device was set to trip on at 12 midnight and to trip off at 8 a.m. An examination of the hot-water heater revealed that the pipe feeding gas to the gas burner had been separated from the hot-water regulator. A thermocouple that controlled the pilot light had been removed. The removal extinguished the pilot light. The state maintains that when the timer tripped on, the resulting spark was the "ignition source" that caused the explosion.

At the hearing on the motion to suppress, Sean Brennan (Brennan), an inspector for the fire district, told the trial justice who was considering the suppression motion that when he arrived at Hoffman's residence, the firefighters had left the interior of the damaged premises. One engine company remained at the scene for the purpose of supplying illumination if needed. On his arrival, other fire officials informed Brennan that they believed that gas had been involved in the explosion. As a consequence they had shut off the gas main and summoned officials from the Providence Gas Company.

Brennan initiated his investigation by walking around the exterior of the premises. Later he was assisted by an East Greenwich detective and a specialist from the State Fire Marshal's staff whose exper-

tise is employed in a variety of circumstances, such as an explosion or the removal of a bomb. The investigation began with an examination of the first floor. Upon completion of the first-floor examination, the trio entered the basement area. Numerous pictures were taken of the interior of the premises as the investigation continued.

During this period the engine company returned to its station. It was now sometime between 1:30 and 2 a.m. The investigation concluded sometime prior to 5 a.m. on the morning of November 10. The East Greenwich detective testified that he left the explosion scene at 3:30 a.m. and returned at 10 a.m., without a warrant, and took additional photographs. He also testified that he reentered the premises on November 11 for the alleged purpose of retrieving clothing for Hoffman and his family. Hoffman, however, denied making such a request or that he had consented to anyone's entering the premises.

The trial justice granted Hoffman's motion to suppress the photographs taken at his premises and barred any use of the gas pipe, the timer, and the hot-water regulator at the trial. In taking this action, the trial justice expressed the belief that the warrantless entry violated art. 1, sec. 6, of the Rhode Island Constitution and the Fourth Amendment of the United States Constitution. He found that the entry by Brennan and his associates was detached from the legal entry of the fire personnel and that Hoffman retained a legitimate privacy interest in his fire/explosion-damaged home. In reaching this conclusion, the trial justice relied on Justice Stevens's concurring opinion in *Michigan v. Clifford*, 464 U.S. 287, 301, 104 S.Ct. 641, 651, 78 L.Ed.2d 477, 489 (1984), where Justice Stevens observed, " '[O]nce the fire has been extinguished and the firemen have left the premises, the emergency is over.' *Id.* [*Michigan v. Tyler*], [436 U.S. 499] at 516 [98 S.Ct.1942, 1953, 56 L.Ed.2d 486]. I would only add that the departure of the firemen should also establish a presumption that the fire has been extinguished and that any danger

---

1. Hoffman's residence was unoccupied when     the explosion occurred.

of rekindling is thereafter too slight to provide independent justification for a second entry * * *."

■ In reviewing a decision in which constitutional rights are involved, as in the instant dispute, this court "shall independently examine the facts, findings and the record of the lower court" to determine whether the trial justice erred in ruling on the motion to suppress. *State v. Sundel*, 121 R.I. 638, 644, 402 A.2d 585, 589 (1979). It is a well-settled principle that a warrantless entry into a home to conduct a search is unreasonable under the Fourth Amendment, except in special circumstances. *Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38, 45 (1981). A burning building clearly creates an exigency that justifies a warrantless entry by fire officials to fight a blaze. *Michigan v. Clifford*, 464 U.S. at 293, 104 S.Ct. at 646, 78 L.Ed.2d at 483. Once firefighters enter a building for this purpose, they may seize evidence of arson that is in plain view. *Id.* at 294, 104 S.Ct. at 647, 78 L.Ed.2d at 484; *see Coolidge v. New Hampshire*, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564, 582–83 (1971). Moreover, "officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished." *Michigan v. Tyler*, 436 U.S. 499, 510, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486, 499 (1978).

■ An immediate threat that the blaze might rekindle also presents an exigency that justifies a warrantless and nonconsensual postfire investigation. *Clifford*, 464 U.S. at 293 n.4, 104 S.Ct. at 647 n.4, 78 L.Ed.2d at 484 n.4.

The Supreme Court, in *Tyler*, held that fire officials were entitled to enter fire-damaged premises approximately four hours after a fire had been extinguished and all firefighters had departed the scene, without obtaining a warrant. 436 U.S. at 511, 98 S.Ct. at 1950–51, 56 L.Ed.2d at 499. The Court found this entry was actually a continuation of the initial lawful entry by the firefighters. *Id.* The Court invalidated searches of the premises conducted a few weeks after the fire, however, because they were clearly detached from the original exigency and warrantless entry. *Id.*

Six years after *Tyler*, the Supreme Court attempted "to clarify doubt that appears to exist as to the application of our decision in *Tyler*." *Clifford*, 464 U.S. at 289, 104 S.Ct. at 645, 78 L.Ed.2d at 481. In a plurality opinion Justice Powell set forth three factors to be utilized in analyzing the constitutionality of warrantless and nonconsensual entries onto fire-damaged premises: (1) whether there are legitimate privacy interests in the fire-damaged property that are protected by the Fourth Amendment, (2) whether there are exigent circumstances that justify the governmental intrusion regardless of any reasonable expectation of privacy, and (3) whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity. *Id.* at 292, 104 S.Ct. at 646, 78 L.Ed.2d at 483.

In *Clifford* all fire officials and police left the premises at approximately 7 a.m. when the fire was extinguished. *Id.* at 290, 104 S.Ct. at 645, 78 L.Ed.2d at 481. Five hours later, arson investigators arrived at the scene to investigate the cause of the blaze and found a work crew in the process of boarding up the defendant's house. *Id.* at 290, 104 S.Ct. at 645, 78 L.Ed.2d at 482. The investigators entered the residence and conducted an extensive search without obtaining either consent or a warrant. *Id.* at 290–91, 104 S.Ct. at 645, 78 L.Ed.2d at 482. The Court found that the Cliffords had taken measures to secure their house against invasion; therefore, they maintained a reasonable expectation of privacy in their fire-damaged property. *Id.* at 296–97, 104 S.Ct. at 648, 78 L.Ed.2d at 486. As a result the Court held that the search violated the Fourth Amendment. *Id.* at 298, 104 S.Ct. at 649, 78 L.Ed.2d at 487.

This court has addressed the validity of a warrantless search of a fire-damaged residence in *State v. Moretti*, 521 A.2d 1003 (R.I.1987). In *Moretti* we relied upon the principles set forth in *Tyler* and subsequently delineated in *Clifford*.

It appears that the trial justice, in relying on Justice Stevens's theory that a fire emergency would terminate at that point when the flames have been extinguished and the firefighters have returned to their stations, apparently overlooked Justice Stevens's initial comments where he emphasized:

"There is unanimity within the Court on three general propositions regarding the scope of Fourth Amendment protection afforded to the owner of a fire-damaged building. No one questions the right of the firefighters to make a forceful, unannounced, nonconsensual, warrantless entry into a burning building. The reasonableness of such an entry is too plain to require explanation. Nor is there any disagreement concerning the firemen's right to remain on the premises, not only until the fire has been extinguished and they are satisfied that there is no danger of rekindling, but also while they continue to investigate the cause of the fire." *Clifford*, 464 U.S. at 299–300, 104 S. Ct. at 650, 78 L. Ed. 2d at 488.

■ Turning to the issue of whether exigent circumstances existed that would justify the warrantless entries made by Brennan and his associates, we are of the belief that the exigency created by the explosion and the fires was still present when their investigation began. Even though some fire officials who initially responded to the call to Hoffman's residence had departed from the premises, a number of other officials remained at the scene.

Brennan testified that he perceived the greatest danger confronting him to be an imminent collapse of the building. He stated that half of the building on the north side was suspended in air because the supports from the basement had been knocked out by the force of the explosion. The fire marshal's specialist testified that the first floor of the structure could have collapsed onto the piping and the boiler.

A representative from the Providence Gas Company testified that when he entered Hoffman's premises, he was aware that the structural integrity of certain areas of the ranch house was questionable.

It is our belief that the trial justice erred in concluding that the exigency had expired at the time Brennan was conducting his investigation. Although it is conceded that rekindling did not appear to be imminent, we find that legitimate concerns regarding additional structural collapse did persist at the time Brennan began his search. We subscribe to the Supreme Court's position that "[i]mmediate investigation may * * * be necessary to preserve evidence from intentional or accidental destruction." *Tyler*, 436 U.S. at 510, 98 S.Ct. at 1950, 56 L.Ed.2d at 499. Because of the havoc wrought by the explosion, we consider Brennan's entrance as an extension of the initial lawful entry made by the firefighters. The evidence initially seized by the investigators was in "plain view" and consequently not subject to a warrant requirement. *See Tyler*, 436 U.S. at 509, 98 S.Ct. at 1950, 56 L.Ed.2d at 498.

■ We do not contend that the exigency existed until such time as Brennan and his colleagues terminated their investigation, but we do acknowledge that their right to remain was limited to a "reasonable time" during which they could "investigate the cause of a blaze after it has been extinguished." *Tyler*, 436 U.S. at 510, 98 S.Ct. at 1950, 56 L.Ed.2d at 499.

Consequently the subsequent entries by the East Greenwich detective at 10 a.m. on November 10 and again on November 11 were clearly detached from the initial emergency and investigation, and the trial justice quite properly barred the use of any evidence collected on those occasions.

Finally, this court rejects defendant's assertion that the investigators in this matter were searching to gather evidence of criminal activity. When Brennan became aware of the dismantled hot-water tank, there was, at that point, no foregone conclusion that criminal activity was involved in the explosion. Although the possibility of arson was apparent from the outset of the investigation, it was not confirmed until the discovery of the timer. As the Supreme Court of Pennsylvania stated in *Commonwealth v. Smith*, 511 Pa. 36, 47, 511 A.2d 796, 801 (1986), "A mere suspicion without more * * * does not convert an investiga-

tion of the cause of a fire into a search to gather evidence of criminal activity * * *."

The Supreme Court has recognized that "determining the cause and origin of a fire serves a compelling public interest." *Clifford*, 464 U.S. at 293, 104 S.Ct. at 647, 78 L.Ed.2d at 484. We believe that the same sentiments are applicable in determining the nature and origin of an explosion such as the one that played havoc with the structure that formerly served as home to the Hoffman family.[2]

The state's appeal is sustained in part and denied in part. The evidence obtained during the period when Inspector Brennan was on the premises shall be admissible into evidence. The evidence procured by the East Greenwich detective upon his return to the premises at 10 a.m. on November 10 and his reentry on November 11 will not be admissible at trial.

---

2. Two days after the explosion the East Greenwich building inspector, acting pursuant to the pertinent provisions of the State Building Code, to wit, G.L.1956 (1985 Reenactment) §§ 23–27.-3–124.1(5) and 23–27.3–124.2, notified Hoffman and his wife that "the structure situated at 183 First Avenue * * * is declared unsafe and its use for occupancy has been prohibited."