512 A.2d 1199

**COMMONWEALTH of Pennsylvania,**

v.

**Kathleen EHRSAM, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 1986.

Filed July 9, 1986.

42

44

46

James P. McEvilly, Jr., Feasterville, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Com., appellee.

Before ROWLEY, MONTEMURO and KELLY, JJ.

MONTEMURO, Judge:

This appeal presents multiple claims alleging ineffectiveness of trial counsel, errors in the court's charge to the jury, the unconstitutionality of section 9712 of the Mandatory Minimum Sentencing Act,[1] and error in the court's refusal to order disclosure to the defense of certain notes made by the complainant during the trial.

Appellant, Kathleen Ehrsam, was charged with attempted homicide,[2] aggravated assault,[3] simple assault,[4] recklessly

1. 42 Pa.C.S. § 9712.
2. 18 Pa.C.S. § 901 and § 2501.
3. *Id.* at § 2702
4. *Id.* at § 2701.

endangering another person,[5] and possession of an instrument of crime.[6] She was tried before a jury and, on December 15, 1983, was found guilty of aggravated assault, simple assault, recklessly endangering another person and possession of an instrument of crime. Following the denial of post-verdict motions, appellant was sentenced to a term of imprisonment of five to ten years. Thereafter, appellant filed a timely motion for reconsideration of sentence, which was denied. This appeal followed.

The trial court correctly summarized the pertinent facts in this case as follows:

On July 3, 1983, Andrew Woehrel was shot by defendant [appellant] at a rental property owned by Woehrel. The property, which was located in Kintnersville, Bucks County, Pennsylvania, had been rented to defendant and her husband, Edwin Ehrsam, and their family for a period of approximately one year prior to the incident. The Ehrsams had fallen behind in their rent payments and had been advised by Woehrel in May, 1983 that he wanted to obtain new tenants by July, 1983. The Ehrsams had indicated to Woehrel that they would vacate the premises by July 1, 1983. When the Ehrsams did not vacate the premises as promised, Woehrel offered to help them move. The Ehrsams said they would discuss it and get back to him.

On July 3, 1983, not having received a response to his offer, Woehrel drove to the rented property at noontime to discuss the situation. A heated argument ensued between Woehrel, Edwin Ehrsam and defendant with the Ehrsams telling Woehrel they would not leave voluntarily and that Woehrel would have to evict them. Defendant threatened to call the police. Woehrel offered to assist the Ehrsams monetarily, and by allowing them to camp on his other property which was a bar located nearby. Edwin Ehrsam promised to get back to him later that day.

5. *Id.* at § 2705.

6. *Id.* at § 907.

That afternoon, Woehrel asked his son, Mark, and Mark's friend, Paul McBride, to stop by the Ehrsams to see whether they had decided to leave. When he arrived, Mark discussed the situation with defendant's husband. Defendant thereafter accosted Mark and Paul and threatened to shoot them if they didn't get off the porch.

Meanwhile, Woehrel had asked a friend, Vic Jones, to accompany him to the Ehrsams. Woehrel proposed that Jones impersonate a prospective tenant for the property. Jones refused, but did agree to go with Woehrel to discuss the situation with the Ehrsams again and to offer them the use of his van in moving. Jones owned rental properties and had prior experience in handling recalcitrant tenants.

Woehrel and Jones drove to the Ehrsams in Woehrel's car and parked it next to hedgerows in front of the house. Woehrel testified that Jones knocked on the door, and then he heard Jones yell "Hey, what are you doing?" Jones then ran to the car holding a shotgun which he threw in the backseat. [Jones testified at trial that he had grabbed the shotgun from appellant's husband.] Defendant and her husband were on the porch of the house. A scuffle ensued where defendant and her husband attacked Jones and attempted to regain the shotgun. Woehrel then saw an individual, later identified as defendant's brother, Ted Praul, point a .22 rifle out of a window and shoot at the car tires. Praul then left the house and threatened to blow Woehrel's head off if the shotgun wasn't returned. Defendant then took the shotgun into the house.

Woehrel got out of the car to help Jones. As he approached the house, defendant came out of the house onto the porch pointing the .22 rifle at Woehrel. Defendant threatened to shoot Woehrel and then without further warning shot him. The bullet struck Woehrel in the side then travelled to his spine. Jones testified that he heard Woehrel cry "Oh, I'm shot, Vic, I'm shot" and then he saw Woehrel lying on the ground in front of the porch.

The result of the gunshot wound paralyzed Woehrel from the waist down and necessitated lengthy hospitalization and rehabilitation treatments.

Trial court's opinion at 1–4.

Appellant's version was somewhat different. While not denying that she had shot Woehrel, appellant testified that Woehrel was in the dining room inside the house when the shooting occurred. According to appellant, Jones and Woehrel forced their way into the house and in an ensuing scuffle her husband ended up lying on the floor with Woehrel standing over him pointing a shotgun at her husband's chest. Appellant testified that, after she observed Woehrel squeeze the trigger of the shotgun, she shot him with a .22 caliber rifle. She stated that Woehrel fell back against the front door, staggered a few steps onto the porch, and then fell to the ground. N.T. December 14, 1983, at 360–363.

As we indicated above, appellant raises the following claims on appeal: (1) defense counsel was ineffective; (2) the court erred in charging the jury that appellant had a duty to retreat; (3) the court erred in failing to charge the jury that the house's front porch was part of the dwelling; (4) the court erred in failing to charge the jury that a landlord does not have a right to remain on leased property against the wishes of the lessee; (5) section 9712 of the Mandatory Minimum Sentencing Act is unconstitutional and; (6) the court erred in refusing to order the Commonwealth to disclose to the defense the contents of certain notes which the victim had made during the trial.

## INEFFECTIVENESS OF TRIAL COUNSEL

Appellant presents multiple claims of defense counsel's ineffectiveness, which we will consider *seriatim*.

When reviewing the effectiveness of counsel, the threshold inquiry is whether the issue/argument/tactic which counsel has foregone, and which forms the basis for the assertion of ineffectiveness, is of arguable merit. This

is so because counsel cannot be considered ineffective for failing to assert a baseless claim. *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). If the underlying claim possesses arguable merit, we then ask whether counsel's handling of the matter had a reasonable basis designed to effectuate his client's interests. *Commonwealth v. Broadwater,* 330 Pa.Super. 234, 479 A.2d 526 (1984). Finally, even if counsel was ineffective, to prevail on appeal the appellant must show that the ineffectiveness so prejudiced his (her) case as to deprive him (her) of a fair trial. *Commonwealth v. Pierce,* 345 Pa.Super. 324, 498 A.2d 423 (1985).

Appellant's first claim of ineffectiveness regards counsel's failure to object to the introduction of what appellant alleges was illegally obtained evidence. Appellant refers to measurements and photographs of the interior of the house made by police officers who arrived on the scene shortly after the shooting and conducted a warrantless search of the house. She also refers to the officers' recollections as to their observation of the interior of the house.

Our review of the record convinces us that the underlying claim has no arguable merit inasmuch as there was no valid basis for suppressing the aforementioned evidence. Although as a general rule a search and seizure conducted without a warrant is deemed unreasonable for constitutional purposes, the warrant requirement is excused where exigent circumstances exist. *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978). Such circumstances arise where the need for prompt police action is imperative, either because evidence sought to be preserved is likely to be destroyed or secreted from investigation, *id.,* 480 Pa. at 102, 389 A.2d at 106, or because there exists a threat of physical harm to police officers or other innocent individuals, *Commonwealth v. Hinkson,* 315 Pa.Super. 23, 27, 461 A.2d 616, 618 (1983). We believe both conditions were present in the instant case.

■ When police officers arrived on the scene shortly after the shooting, they were told that appellant was the perpetrator and that she was still inside the house. N.T., Suppression Hearing, December 12, 1983, at 13–14, 34–35. Since the officers had been told that appellant had already shot one person, considerations for their own safety as well as that of others[7] clearly justified their entry into the house. Once inside, they were entitled to seize items in plain view. "[T]he police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). *See also, Commonwealth v. Sourbeer*, 492 Pa. 17, 422 A.2d 116 (1980) (Flaherty, J., with three justices concurring). The photographs, measurements, and officers' recollections which were admitted into evidence were all of readily observable features of the interior of the house.[8] The items seized were thus in plain view.

The warrantless search was additionally justified by a need to insure that evidence of the crime was not removed or destroyed. The officers had been told that shots had been fired from the house, and it was certainly reasonable for them to enter the house as soon as possible in order to prevent appellant or anyone else who might be inside from secreting either the weapon involved or bullet casings.

We conclude that as the warrantless search fell within the exigent circumstances exception to the necessity to obtain a warrant, no valid basis existed for suppressing the challenged evidence. Thus, defense counsel was not ineffective in failing to assert a baseless claim. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985).

7. One of the officers testified that when he peered in the front door of the house, he saw appellant standing on the stairway with two young boys, later identified as her children. N.T. Suppression Hearing, December 12, 1983, at 35. The safety of those children would clearly have been of great concern to the police.

8. For example, the photographs showed bullet casings lying on the floor and a slug embedded in a wall. The measurements showed the dimensions of rooms, as well as those of the front porch.

■ Appellant's next allegation of counsel's ineffectiveness is based on counsel's failure to request that closing arguments be transcribed. The sole authority which appellant cites is *Commonwealth v. Crowther*, 241 Pa.Super. 446, 361 A.2d 861 (1976), which stands for the narrow proposition that when there is a question of ineffectiveness, new counsel must examine the entire record for evidence of such ineffectiveness. Appellant argues, somewhat obliquely, that if closing arguments had been transcribed, new counsel might have discovered evidence of trial counsel's ineffectiveness therein. According to appellant, trial counsel was thereby ineffective for not providing the means whereby new counsel might have uncovered additional examples of trial counsel's ineffectiveness.

We find this argument to be without merit. Appellant would have us impose a per se obligation on defense counsel to always request that closing arguments be transcribed, failing which counsel would be held automatically ineffective. We have found no case which imposes such an obligation, and we decline to do so. Finding the underlying claim possesses no arguable merit, we therefore conclude trial counsel was not ineffective in this regard.

■ Appellant next argues that counsel was ineffective for not adequately cross-examining the Commonwealth's expert witness on a crucial point of testimony. Appellant refers to Dr. Michael Rhodes, a specialist in traumatology, who testified as to the nature of the victim's wounds, and gave his expert opinion that the immediate effect of the bullet striking the victim would have been to cause him to drop immediately. This testimony supported the Commonwealth's theory that the victim, who was discovered by paramedics lying on the sidewalk about two feet from the front porch, was shot while outside the house. Appellant claims counsel did not question Dr. Rhodes vigorously enough in an attempt to discredit this testimony. As stated *supra,* it was appellant's contention that the victim was shot while he was inside the house, and then staggered onto the porch from which he fell to the ground.

 We have carefully examined that portion of the transcript covering defense counsel's cross-examination of Dr. Rhodes on this point, and find that it simply does not support appellant's contention that the cross-examination was inadequate. Defense counsel was able to elicit from Dr. Rhodes a statement that the victim might have been able to take a step after being shot, as well as an admission from Dr. Rhodes that his opinion that the victim would have dropped immediately was merely a guess, based on scientific experience. N.T. December 13, 1983, at 172–173. Defense counsel's cross-examination of Dr. Rhodes was more than adequate, and we accordingly find no ineffectiveness in this regard.[9]

 Appellant next argues counsel was ineffective for failing to object to the admission of allegedly hearsay evidence, consisting of testimony from a rescue squad attendant, and from one Paul McBride, a friend of the victim's son, who was present at the scene shortly before the shooting.

The record reveals that the rescue squad attendant testified that when she arrived at the scene shortly after the shooting, she found the victim lying on the ground and that the victim, who was upset and agitated, stated, "She [appellant] stuck the gun out of the door and shot me before I got my foot up to the step." N.T. December 13, 1982, at 83.

We find that the underlying claim possesses no arguable merit since the above statement was clearly admissible under the excited utterance exception to the hearsay rule. To come within this exception, a statement must be:

[A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or close-

---

9. Appellant also avers that counsel should have called in an expert witness for the defense to testify as to whether the victim would have been able to move after being shot. There was no necessity for this action, given the responses which defense counsel was able to elicit from Dr. Rhodes.

ly witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Pronkoskie*, 477 Pa. 132, 137–38, 383 A.2d 858, 860 (1978) (citation omitted). In the instant case the victim, who was upset and agitated at the time, made the statement shortly after having been shot, an unexpected and shocking occurrence which would surely have caused him to be subject to overpowering emotion. The statement was, in addition, made at the place where the shocking event occurred and was in reference to that event. Given the clear admissibility of the statement, it would have been futile for defense counsel to have objected to its admission.

■■■■■ Appellant also claims defense counsel should have objected, on the basis of inadmissible hearsay, to Paul McBride's testimony that after appellant threatened to shoot Mark Woehrel (the victim's son), appellant's husband said, "Don't push her. She'll do it." N.T., *supra* at 94. The Commonwealth responds that, since the parties were arguing at the time, this statement also falls within the excited utterance exception. We cannot agree. This statement was made *prior* to the shooting, and we cannot find that the fact that the parties were arguing brings the statement within the ambit of the excited utterance exception. The record does not support a conclusion that appellant's husband's statement resulted from "overpowering emotion caused by some unexpected and shocking occurrence." *Commonwealth v. Pronkoskie, supra,* 477 Pa. at 137–138, 383 A.2d at 860. Since the statement was inadmissible hearsay, the underlying claim of this allegation of ineffectiveness has arguable merit. We next ask whether counsel could have had any reasonable basis for failing to object to the statement's admission. We cannot perceive any such basis, but our ineffectiveness analysis does not end at this point. The final question is whether appellant has established, as she must under *Commonwealth v.*

*Pierce, supra,* that she suffered prejudice from the statement's admission. Since there was more than enough evidence supporting the Commonwealth's version of the shooting, the erroneous admission of appellant's husband's statement was a mere trifle which can in no way be construed as having denied appellant a fair trial. Appellant accordingly cannot prevail on this claim.

 Appellant's final allegation of trial counsel's ineffectiveness concerns counsel's failure to object to the introduction at trial of statements obtained from appellant by the police allegedly in violation of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In her brief appellant has failed to identify the objectionable statements. She merely makes a general reference to (1) statements she made to the investigating officer, Trooper Vieczorek, as she was being driven to police headquarters in his vehicle (the statements were made prior to being given *Miranda* warnings), and (2) statements she made to Trooper Vieczorek at the police station, after having been advised of her *Miranda* rights. Our review of the record reveals that the only testimony Trooper Vieczorek gave at trial regarding appellant's statements to him concerned appellant's statement that, at one point, there was a tug of war between her husband and the victim over the shotgun. N.T. December 14, 1983, at 410. It is not absolutely clear from the record precisely when appellant made this statement. Given its lack of specificity, we will not consider appellant's claim.[10] Assertions of ineffectiveness in a vacuum are not ineffectiveness, and claims of ineffectiveness raised in the abstract will not be considered. *Commonwealth v. Silo,* 509 Pa. 406, 502 A.2d 173 (1985).

**10.** We note that if we were to consider appellant's claim on the merits, we would not find ineffectiveness since defense counsel had a reasonable basis for not objecting to the introduction of the statement which appellant made to Trooper Vieczorek. The statement was non-prejudicial to appellant's case and, in fact, served to corroborate her testimony at trial concerning the shooting.

## TRIAL COURT'S CHARGE TO THE JURY

Appellant next argues that the trial court erred in three respects in its charge to the jury.

She first avers that the court erred when, in instructing the jury regarding appellant's claimed defense of justification,[11] it stated that appellant's husband had a duty to retreat from deadly force. Conversely, appellant objects to the trial court's failure to include her requested point for charge that there is no duty to retreat from deadly force when an individual is in his or her own dwelling.

The relevant portion of the court's charge states:

Now, we're going to talk about the defense of justification.... And what, in effect, it means is that if the conduct of the defendant though otherwise criminal in nature would, by virtue of certain circumstances under the law be legally justified, then no offense has been committed. When there is evidence presented at trial that deadly force was used in self-defense, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense or defense of another. *In this particular case there is no allegation of self-defense but the defense of another person.* It is sufficient that the Commonwealth prove only that one of the elements required in the use of deadly force is lacking. If any element is disproved, then you may disregard the defense of justification.

A person is justified in using deadly force in defense of another person when and only when the circumstances are such that the latter person would be justified or excused if he or she had used deadly force in his own defense. Let me clarify that. The principles and the rules applicable to the use of deadly force for the defense of another person are the same rules that would apply to that person's own self-defense. A person interfering in a

---

11. It will be recalled that appellant testified that when she fired, her husband was lying on the floor in the dining room and that the victim was squeezing the trigger of a loaded shotgun which he had jammed against her husband's chest.

difficulty in behalf of another simply steps into the latter's shoes. He, or in this case she, may lawfully do in another's defense what such other might lawfully do in his own defense, but no more. She stands on the same plane. I use "she" here because we are talking about the defendant. She stands on the same plane, is entitled to the same rights and is subject to the same conditions, limitations and responsibilities as the person defended, and her act must receive the same construction as the act that the person defended would receive if the deadly force was used by him.

It is necessary and sufficient to justify or excuse the use of deadly force in defense of another where neither the person defended nor the defendant shall be at fault in provoking or continuing the difficulty; secondly, that the danger, real or apparent to the person defended, should be of death or great bodily harm; third, that the danger should be present, imminent, impending, and not a past danger. Now, remember, you consider the facts as I mention these things, the facts as testified to, because you are going to have to decide whether or not the conduct on the part of the defendant was justified to protect her husband from an imminent, present danger. According to her testimony, she said that it was imminent; that the gun was in her husband's chest or pointed at his chest or above, and that she felt that there was the effort to pull the trigger. Fourth, that either the person defended shall be in real danger of death or great bodily harm, or it shall be reasonably apparent to her, in this case to the defendant, that she honestly and reasonably believed that the person defended is in such danger and that it is necessary to use deadly force to save him therefrom. *Fifth, that the person defended has the duty to retreat if he can do so without increasing his peril. And you consider, in a sense, this is a third person position. Was the [appellant] in a position to believe that there was the possibility that the person*

*defended, her husband, could retreat from the peril without increasing the danger?*

N.T. December 15, 1983, at 446–448 (emphasis added).

 Appellant correctly states that while, generally, there is a duty to retreat if such retreat can be safely accomplished, one who is attacked in his dwelling need not retreat, but may stand his ground and meet deadly force with deadly force. *Commonwealth v. Eberle*, 474 Pa. 548, 379 A.2d 90 (1977). She contends the trial court's statement that appellant's husband had a duty to retreat was incorrect and that the court should have included her requested charge regarding no duty to retreat. We agree. It does not follow, however, that the court's error warrants reversal. It is axiomatic that, when an appellate court reviews a jury instruction, the charge must be read and considered as a whole. *Commonwealth v. Rodriguez*, 343 Pa.Super. 486, 495 A.2d 569 (1985). In addition, the error is not reversible unless the defendant was prejudiced thereby. *Commonwealth v. Morgan*, 265 Pa.Super. 225, 401 A.2d 1182 (1979). We find that, reading the instruction as a whole, appellant suffered no prejudice. With but one respect, i.e., the duty to retreat, the court's charge correctly and thoroughly outlined the salient features of the defense of justification as it related to appellant's version of the events surrounding the shooting.[12] In addition, the court instructed the jury that, insofar as the duty to retreat was concerned, the Commonwealth would have to prove not only that appellant's husband had a duty to retreat, but *also* that appellant's perception of the circumstances was that he could have done so without increasing his peril. There was no possibility that the jury could have found the existence of the latter element since the evidence presented as to justification[13] unequivocally established that appellant's husband

12. We note that the jury was free to completely reject appellant's version of the shooting and instead believe the testimony of the Commonwealth's witnesses, which raised no issue of self-defense or defense of others.

13. Appellant's testimony as to the justification defense was corroborated by the testimony of her husband and brother.

could *not* have safely retreated. That is, even with the trial court's error, the jury could not have found that the Commonwealth had established a violation of any duty to retreat. We accordingly conclude that the trial court's error in charging the jury that there is a duty to retreat (even when one is attacked in one's own home) could have had no prejudicial impact on the jury's deliberations. The error was harmless beyond a reasonable doubt.[14]

Appellant also contends that the court erred in failing to instruct the jury that (1) the porch of the house was part of appellant's dwelling, and (2) that a landlord does not have a right to remain on leased property against the wishes of the lessee. We find that the opinion of the court below, filed on April 4, 1985, adequately addresses and correctly disposes of both these allegations, and see no need for further comment in this regard.

In her fifth claim on appeal, appellant challenges the constitutionality of the Firearms provision of the Mandatory Sentencing Act, 42 Pa.C.S. § 9712,[15] in the following respects. She contends that section 9712 violates the equal protection clause; the due process clause, both in denying individualized sentencing and in allowing proof of possession of a firearm to be established by a preponderance of the evidence; the principle of separation of powers by granting the prosecutor complete discretion in deciding whether to invoke section 9712; and the prohibition against cruel and unusual punishment.

The claim that section 9712 violates due process in allowing proof of possession of a firearm to be established by a preponderance of the evidence was explicitly rejected by our Supreme Court in *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985), *cert. granted sub*

14. Based on these same reasons, we find the court's error in failing to include appellant's requested point for charge regarding no duty to retreat was also harmless error in that the omission could not have affected the jury's deliberations.

15. 42 Pa.C.S. § 9712 requires the imposition of a minimum sentence of five years confinement for persons found to have been in visible possession of a firearm during the commission of certain felonies.

*nom, McMillan v. Pennsylvania,* —— U.S. ——, 106 S.Ct. 58, 88 L.Ed.2d 47 (1985). *In Commonwealth v. Irving,* 347 Pa.Super. 349, 500 A.2d 868 (1985), this court held that section 9712 does not violate equal protection, and in *Commonwealth v. Cofoni,* 349 Pa.Super. 407, 503 A.2d 431 (1986), we determined that it does not violate separation of powers by granting unbridled discretion to the prosecutor. Appellant's challenges to section 9712 on these grounds are accordingly without merit.

We find that appellant's claim that section 9712 violates due process by impermissibly precluding individualized sentencing is also without merit. In considering such a claim in *Commonwealth v. Cooke,* 342 Pa.Super. 58, 492 A.2d 63 (1985), this court stated that while the judiciary imposes sentence upon conviction, the fixing of penalties for crimes is a task for the legislature, and, as one of its options, the legislature may prescribe a mandatory minimum term of imprisonment. *See Commonwealth v. Hernandez,* 339 Pa.Super. 32, 488 A.2d 293 (1985). "Due process of law is not violated when courts accede to the legislature's authority to frame a coherent statutory scheme for the administration of sentencing...." *Commonwealth v. Cooke, supra* 342 Pa.Super. at 69, 492 A.2d at 69, quoting *Commonwealth v. Hernandez, supra,* 339 Pa.Super. at 40, 488 A.2d at 298.

Appellant's final challenge to the constitutionality of section 9712 alleges that it violates the prohibition against cruel and unusual punishment in that, by not allowing for consideration of a defendant's individual circumstances, it permits disproportionate sentences. *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding that the eighth amendment prohibits the imposition of significantly disproportionate sentences). Appellant claims that the five year minimum sentence was disproportionate in her case because she had no prior criminal convictions.

Whether section 9712 is violative of the prohibition against cruel and unusual punishment is one of first impression in this Commonwealth. We conclude that it does not.

As stated above, while it is the judiciary's function to impose sentence upon conviction, it is for the legislature to fix the penalties for crimes. *Commonwealth v. Cooke, supra.* As decreed by the Supreme Court in *Solem v. Helm, supra,* in assessing a claim that a sentence is so disproportionate as to violate the eighth amendment, "[r]eviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishment for crimes...." *Solem v. Helm, Id.* at 290, 103 S.Ct. at 3009. A punishment violates the eighth amendment only if it is so greatly disproportionate to an offense as to offend evolving standards of decency or a balanced sense of justice. *Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

The legislature's enactment of section 9712 evinces a recognition of the seriousness of felonies committed with firearms, as well as a determination to protect the public from those armed with firearms, to deter violent crime and the illegal use of firearms, and to vindicate the legislature's interest in punishing those who commit serious crimes while visibly armed with a firearm. *Commonwealth v. Wright, supra* 508 Pa. at 40, 494 A.2d at 362. We find that section 9712's five year mandatory minimum sentence is not disproportionate to the seriousness of the crime appellant committed, and does not shock either a balanced sense of justice or offend evolving notions of decency. Appellant's claim that section 9712 violates the prohibition against cruel and unusual punishment is accordingly without merit.

Appellant's final claim on appeal alleges that the trial court erred in refusing to order the Commonwealth to disclose to the defense the contents of certain notes which the victim had made at trial.[16] The record reveals that during the defense's cross-examination on rebuttal of

16. These notes were subsequently marked by the court as Court Exhibit One.

Trooper Vieczorek, the trooper referred to several police reports which he had in his possession. Defense counsel asked to see these reports. The District Attorney assented, but asked the court's permission to first separate from the reports some handwritten notes which the victim had made earlier that day during the testimony of defense witnesses. Defense counsel responded that he should be allowed to see the notes on the basis that they were "a written statement of an eyewitness, and, therefore, discoverable under rule 305." N.T. December 14, 1983, at 417. After reviewing the notes, the trial court denied defense counsel's request. We find that this action was correct.

Before trial appellant requested, by motion to compel discovery, the disclosure by the Commonwealth of statements of the victim and interviews of eyewitnesses. Pa.R. Crim.P. 305(B)(2) provides for the disclosure of such materials as follows:

> *Discretionary with the Court:* In all court cases …, if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>
> . . . . .
>
> (b) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial.

The purpose of making prior statements of Commonwealth witnesses available to defense counsel is to assist the latter in preparing for subsequent cross-examination at trial of that witness. *Commonwealth v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976). That is, defense counsel may be able "to uncover inconsistencies between a witness's *pretrial* statements and his trial testimony." *Commonwealth v. Dalahan,* 262 Pa.Super. 615, 624, 396 A.2d 1340, 1344 (1979) (emphasis added). The statements at issue herein were not pretrial statements. Not only were

they made during trial, they were made after the victim has been cross-examined by defense counsel, and thus could have been of no possible assistance to defense counsel in preparing for that cross-examination. We accordingly find that the notes which the victim made during trial were not subject to discovery under Rule 305(B)(2).[17] We further note that our examination of Court Exhibit One reveals that, in any event, it contains very few statements. It consists primarily of questions posed by the victim regarding defense witnesses' testimony which, as the District Attorney informed the trial court, the victim wished covered during cross-examination of these witnesses. The few statements it does contain do not contradict the victim's testimony at trial.

Finding all of appellant's claims on appeal meritless, we affirm the judgment of sentence.

Judgment of sentence affirmed.

KELLY, J., concurs in the result.

---

**17.** Regardless of the applicability of Rule 305(B)(2), had the notes contained any material exculpatory of the defendant, disclosure would have been mandatory under the constitutional guarantees of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983). Our examination of Court Exhibit One reveals it contains no such exculpatory material.