## Commonwealth v. Person

276

*Bart Tuttle, asssistant district attorney,* for the commonwealth.
*Andrew Schneider,* for defendant.

SALUS, *J.,* May 10, 1988—This case came before the trial judge on February 29, 1988 on charges of violation of Drug, Device and Cosmetic Act, counts 2 and 5, possession and possession with intent to deliver. After a full-blown suppression hearing pursuant to an omnibus pretrial petition asking for suppression and vitration of consent to search by reason of coercion and duress, the trial court issued an order to suppress. Thereafter, the commonwealth asked for a reconsideration and right to brief the issues presented at pretrial and same was granted by the court's order of March 11, 1988. This procedure was taken in order to keep the issues involved at the trial level, in order to avoid the expiration of the 30-day appellate period before a decision was issued, and to afford both counsel more time for briefing and research. After same was done, the court on April 12, 1988, after availing itself of all material at its disposal, reinstated the original suppression from which the commonwealth has appealed. In its reinstatement order, the court observed that there is no precedent exactly on point in this commonwealth but that analogous authorities in Pennsylvania would presume to indicate that the commonwealth is more stringent in requiring a search

warrant under the facts, the exigency having disappeared, and time was not of the essence. This commonwealth is more stringent than federal authorities and sister states in warrant requirements. Whether Pennsylvania is moving toward the federal authorities and the sister states and away from its former position is the purpose of this appeal. Additionally, this appeal presents issues of whether fire marshals and fire police are the same as police authorities in this commonwealth, an issue that has not specifically been addressed or defined herein. The implications of the plain view doctrine are also at issue. Lastly, the question of whether consent under the circumstances was consensual or coerced is also an issue although it need not be addressed unless the appellate court or courts move away from former policies.

The issues presented are four:

(1) Was the search in this case without a warrant properly done when the exigent circumstances had ceased and a warrant could readily have been obtained under the circumstances?

(2) Was the plain view of the fire marshal after the exigencies the plain view of the police authorities especially since that plain view transmitted formed from one to the other the basis of the probable cause factors for the police to obtain a warrant?

(3) Was the plain view of the fire authorities obtained in an administrative posture after the exigency had stopped and then relayed to the police outside the apartment who then searched without a warrant on the information from the fire authorities, equivalent to the plain view of the police?

(4) Was the defendant's consent to search coerced because of the police threat to search with or without a warrant because the police had already had an illegal plain view search without a warrant

on information from fire authorities and at their instigation and invitation, thus making the items seized on the warrantless search "fruit of the poison tree?"

The facts of this case are both interesting and simple. Edward M. Memorella, assistant fire marshall of Upper Moreland, was summoned to 2009B Jason Drive, Huntingdon Valley, Pa. within his jurisdiction, on May 5, 1987 at 3:15 p.m. due to a fire call. He arrived on the scene after the fire engines and after Officer John M. McGowen of the Upper Moreland Police. He determined that the fire originated in a plastic-covered easy chair by accident and that the source of the fire, the chair, was on the apartment complex lawn, smoldering. To insure the public safety, he went into the apartment alone to check where the chair had been, determined it to be the real source of the fire, and investigated to see what, if any, smoke and physical damage had been done as a result of the fire. His inspection confirmed the source of the fire was now removed and that the apartment was ventilating with windows open and only a small insignificant amount of soot had affixed itself to the living room walls, the room where the chair had been. On inspection, the two bedrooms were ventilating, and he observed in the second bedroom a marble slab, a postage scale, a rolled up one dollar bill, a plastic bag with white powdered residue and a bag with green material, and no apparent fire damage.

After the plain view, the fire marshal told Officer McGowen who was outside on the lawn that there was something in the second bedroom he wished him to see and probably related what he had seen. Thereafter, McGowen made his own view and saw what he described as a bag of marijuana, a triple beam scale, a razor, mirror, and plastic bags. The

discovery was relayed to Sergeant Levy at the station and he was summoned to the scene. Shortly thereafter, defendant and his girlfriend returned from shopping and identified themselves as the occupants of the apartment. They were confronted with what Fire Marshall Memorella and Officer McGowen had seen and told that if they did not consent to a search of the suspect area that the police had enough probable cause to obtain a search warrant and search anyway on the basis of plain view items seen. Both were then arrested. Permission to search was granted by Person and he volunteered to show the police where more drugs were stored. He led the police to the drawer of the dresser wherein was contained methamphetamine, marijuana, pills and drug paraphernalia. The drugs were collected and inventoried by the police and ultimately sent to the National Medical Laboratory for analysis.

Later it was determined that all items in the apartment were defendant's and did not belong to his girlfriend. Later investigations showed that defendant and his girlfriend left for shopping thirty minutes prior to the fire and that the neighbors had discovered the fire and summoned the authorities to put out the flames. The fire was an accidental one whose origin was attributed to careless smoking. Defendant Person said he was told of the alternatives open to him before he consented but was placed in a position where he knew the premises would be searched with or without a search warrant so he gave his consent. He already knew that the police had more than a reasonable suspicion of what the apartment contained because of the plain view and possible search beyond that.

## DISCUSSION OF THE ISSUES

From the aforesaid facts, it is clear that the source of police and fire authority intervention in the apart-

ment was the fire in the easy chair. The fire was the reason for their being on the scene and focusing on the apartment and its contents in the first place. Once the easy chair was removed to the lawn and it was determined to be the only item on fire, the exigency and emergency ended and both police and fire participation had essentially terminated. It was arguably proper, however, for the fire marshal to have surveyed the entirety of the apartment to assess for a fire report the extent, if any, of smoke damage and physical damage to the remainder of the apartment. It was during this administrative search by the assistant fire marshall that the items in plain view were discovered.

Federal cases and sister state cases give the fire marshal and his assistants great latitude to investigate fire and to determine its origin, cause, and the extent of the damage. The rationale is to give authorities leeway to find any arson-related causes of the fire. While the fire marshal is lawfully present doing his investigation, he has the authority to seize items of contraband, i.e. drugs in plain view. Federal cases likewise adhere to this reasoning although procedurally they seem to prefer having the fire marshal call the police to do the seizing. The authorities in this area also rationalize that since the fire marshall was legally present for a cause shown, i.e. the fire, he need not have a search warrant for things seen in plain view nor do the police have to have one either as their seizure in plain view is no greater an intrusion. This is so whether the officer is concurrently on the scene with fire authorities or is called later to the "view" by the fire marshal. Thus, federal cases equate the rights and privileges of the fire marshal the same as those of the police and both are considered an "arm" of the law. Indeed, some

states endow fire marshals with police powers so as to allow fire personnel to seize plain view items. See *Michigan v. Clifford,* 464 U.S. 287 (1984) which was quoted favorably in *U.S. v. Samuel V. Fortinc,* Crim. 85-467 U.S. District Ct., E.D. Pa. (1987) by Judge Newcomer, a case unreported. The facts of this plain view case can, of course, be distinguished from the present case inasmuch as the warrantless search and seizure was part of the investigation to determine the source of the fire, and the lab could indeed have been the source and origin of the fire which created the intrusion of the fire marshal in the first place. See also, *U.S. v. Johnson,* 524 F. Supp. 199 (1981) on warrantless searches and seizures. also *United States v. Green,* 474 F.2d 1385 (1973). For state cases see *State v. Bell,* 108 Wash. 2d 193, 737 P.2d 254 (1987) which factually is closest to the instant case.

All of the above cases make fire marshals an arm of the law, and allow a plain view search without a warrant either by the marshal or police because an investigative search was necessary to determine the origin of the fire and the extent and places of fire damage. See similar case of *Commonwealth v. Ehrsam,* 355 Pa. Super. 40, 512 A.2d 1199 (1986).

Pennsylvania law on warrantless searches on these facts has yet to be made. It is clear, however, that Pennsylvania standards are constitutionally more stringent than sister states and the federal courts. A warrantless search by police is per se unreasonable unless the police can show that it falls into an exception such as *exigent circumstances, hot pursuit, or consent.* Thus, the stated prerequisites must be present in order to legalize a warrantless search.

Further, in Pennsylvania a fire marshal is allowed to seize evidence of arson while investigating the *cause or origin* of the fire and may supply information to police regarding plain view evidence of criminal activity. However, at present, there is no authority in Pennsylvania to allow a fire marshal to seize evidence on non-arson related criminal activity, nor is there law to define fire marshals as police authorities.

It is clear that presently Pennsylvania is more restrictive constitutionally in the scope and reason for a search and seizure without a warrant and that the exception prerequisites must be fully present to qualify a search and seizure without a warrant. See *Commonwealth v. Smith,* 511 Pa. 36, 511 A.2d 796 (1986), citing *Michigan v. Tyler,* 436 U.S. 499 (1978), and *Michigan v. Clifford,* 464 U.S. 287 (1984). See *Commonwealth v. Ehrsam,* 355 Pa. Super. 40, 512 A.2d 1199 (1986). Additionally it can be said that factually this case most clearly resembles, in a federal sense, *U.S. v. Hoffman,* 607 F.2d 280, 283-284 (1979) where a similar result to this case was affirmed and on similar reasoning that the exigency was removed and the defendant was not on the premises so that a warrant was required.

Because in the instant case the exigency had been removed and the source and origin of the fire had been *determined* and *removed,* a warrant to search the apartment was necessary even though a fire marshal's administrative investigation of the extent of smoke damage from the fire had uncovered illegal contraband in plain view. The only value of the investigation of the fire for smoke damage was to provide material for a regular report and not to prove criminality. Coincidentally, the view provided sufficient information for an affidavit of probable cause to obtain a search warrant either for the police

on information received or by an affidavit by the fire marshall on behalf of the police's request for a search warrant. Otherwise, the search was not done for uncovering of criminality. It was done to determine the cause, extent, and origin of the fire.

Nor can the commonwealth ignore what preceded the consent by the defendant and justify the search on the basis of consent. Consent in Pennsylvania is justified on the basis of "the totality of circumstances" and it must be given free of coercion and be voluntary! An actor's consent or directly assisting a search imports indicia of voluntariness. In custody, consent creates a heavier burden on the commonwealth to show that the consent was in reality actually voluntary. *Commonwealth v. Kenneth Woods,* 240 Pa. Super. 72, 368 A.2d 304 (1976). Yet the commonwealth need not show that the consentor was aware of his right to refuse consent. *Id.* at 75, 368 A.2d at 306.

In the instant case while defendant as given a choice of volunteering to permit a search, both the police officer's presence in the apartment and his physical knowledge from view of the drugs was illegal and thus the consent given when viewed under the totality of circumstances appears to be coerced and the evidence seized tainted and the "fruit of the poison tree" so as to require suppression. *Commonwealth v. Pichel,* 229 Pa. Super. 103, 323 A.2d 113 (1974). We need not, however, search this point by reason of the analysis hereafter. See also *Commonwealth v. Chiesa,* 329 Pa. Super. 401, 478 A.2d 850 (1984) which is contra because police saw contraband in "plain view" while investigating criminal acts.

It is clear that Pennsylvania law to date does not allow such an instant search without hot pursuit, an exigency or consent without a warrant. Since con-

sent had tangentially been addressed, heretofore, and we need not reach it, and hot pursuit is not in issue, we shall address the exigency requirement and the fire marshal's intrusion and right to effect a seizure.

In Pennsylvania no case has allowed the fire marshal to seize contraband absent its arson-related nexus to the incident. While it is problematic whether the fire marshal in this instance had any right to intrude lawfully since the fire was out, the administrative search was done after the fire's non-criminal cause was determined and after its origin and source was determined. Further, the sole source of the fire was removed before the administrative search uncovered the contraband in plain view. Since the fire was confined to the living room and to the one easy chair now removed from the apartment, why did the fire marshal have to search the back room for smoke damage, the living room not having been extensively damaged from fire or smoke? Thus, the administrative search and investigation was questionable under the circumstances and its justification, if any, can be founded solely on administrative practice and reporting and/or the need to remove noxious smoke or smells via complete ventilation. Any reasons for a warrantless search in this case were minimal at best when balancing the extent of the intrusion and the prior removal of the exigency for which intrusion was originally necessitated.

Because Pennsylvania has never equated in any case a fire marshal's duties being the same as a police officer's duties and thus both being broad brushed as police authorities, it is doubtful that the fire marshal's view can be equated to that of a police view. Therefore, when the fire marshal was lawfully present on the premises for an administrative

search and survey of the smoke damage, the non-arson source and sole object containing fire having been removed, the fire marshall should have reported to the police what he saw in plain view without allowing the police to search illegally and thereafter requiring the police to obtain a search warrant on information received from the marshal. This would have been sufficient probable cause for an affidavit to obtain a search warrant. Once it was obtained, then a thorough search of the apartment both of plain view objects and those not in plain view was proper. The legitimacy of the search would then be unquestioned and consent would not have been an issue.

When the police officer searched the second bedroom on information received from the fire marshal and at his invitation, all exigent circumstances for any authority's presence had long since been removed. The conflagration, though localized, was out. The object that was burning had been removed to the front lawn. The occupants of the apartment were still shopping and could not have destroyed any evidence. Further, if they had returned, as they did, the police could have secured the apartment until a warrant was obtained and served on them. It is clear that the police entry into the second bedroom was unlawful and unconstitutional. The police were solely on the scene to assist in the extinguishment of the fire and had no evidence of criminal activity on the premises when they responded to the scene and even after the chair was removed from the apartment to the lawn. It was only due to happenstance of the fire marshal's search for smoke damage and the walk through to insure proper ventilation that evidence of criminality was seen in plain view by the fire marshal.

If the foregoing were not enough to suppress under the present state of Pennsylvania law, certainly

to justify the search on the basis of consent of defendant is building a foundation for a warrantless search on quicksand. For, it is clear that when defendant was confronted with the facts of an invalid search without a warrant before his return to the apartment and further was told that a search pursuant to a warrant would take place regardless of his consent, the predicament defendant faced was one of give up now because "if you resist, we will do it anyway." Such consent under all the circumstances was coerced. The totality of circumstances standard must require this. Defendant at that point was faced with no choices whatsoever. He was in a corner without any viable alternatives and was not only coerced to give consent but was put under much duress. The evidence thereafter illegally seized was tainted and likewise had to be suppressed as "fruit of the poison tree."

For the foregoing reasons, the suppression of the drugs seized *sans* warrant was proper because the seizure occurred without the obtaining of a warrant and under circumstances that were not exigent, in hot pursuit and/or with consent. The intrusion under Pennsylvania law was so intense and without an exception so as to require a search warrant in order to search. Because of the foregoing, the "poisoned fruits" of the unlawful search were properly suppressed and the suppression of the trial court should be affirmed by dismissing this appeal.