J-S75007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LEROY WILSON :
:
Appellant : No. 3250 EDA 2017

Appeal from the Judgment of Sentence May 5, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0007374-2015

BEFORE:  PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.:                    **FILED JUNE 05, 2019**

Appellant, Leroy Wilson, appeals from the judgment of sentence entered on May 5, 2017 in the Philadelphia Court of Common Pleas after he was found guilty of first degree murder, robbery, burglary, and possessing an instrument of crime ("PIC"). Wilson challenges the trial court's discretion in admitting photographic evidence, the sufficiency of the evidence, and the trial court's discretion in imposing sentence. We affirm.

The trial court summarized the facts of this case as follows.

Defendant served as a handyman to various residents, including the victim, eighty-five-year-old Regina Brunner Holmes, living on or around the 300 block of Roumfort Road in Philadelphia. On June 27, 2015, defendant was in the neighborhood, gardening and moving furniture for one of the victim's neighbors. While he was working, he approached another neighbor, Darlene Adams, and inquired about a car of hers that she had listed for sale. Defendant told Ms. Adams that he believed the car was worth $2,500 and Ms. Adams agreed to sell the car to defendant in exchange for $1,500 and defendant's services. Defendant told Ms. Adams that

he would pay her the following week, after he collected his pay from the victim and another neighbor for services he had performed on their homes.

Two days later, on June 29, 2015, Adam Brunner, the victim's son, received a phone call from his mother's employer, the Chestnut Hill Local, where she worked as a typist and editor. Mr. Brunner was told that his mother had not shown up for work, which was highly unusual because she had never been late. Mr. Brunner went to his mother's home, at 307 Roumfort Road, but was unable to get into the home or get into contact with his mother, so he called the police.

After arriving at the scene and gaining entry into the victim's home, police located the victim lying on her bedroom floor, with multiple lacerations and strangulation marks on her body. In addition, police observed a large amount of blood on her bed and bedroom wall, and multiple emptied purses on the bed and floor. The victim was pronounced dead at the scene. An autopsy revealed that the victim died during the early morning hours of June 28, 2015, from a combination of multiple stab wounds, strangulation, and blunt trauma to her head.

During the course of their investigation, Philadelphia Police Detectives discovered that the victim's ATM card was used three times at a Wells Fargo Bank on Broad Street at approximately 3:30 A.M. on June 28th, the same morning that the victim was killed. Detectives also discovered that one of the victim's credit cards was used to make a large online purchase at Toys R Us. The I.P. address from where the purchase was made was traced to 3137 North Stillman Street in Philadelphia, the home of Micshell Hoskins, defendant's ex-girlfriend, and where defendant periodically resided.

On the morning of the murder, at approximately 3:00 A.M., defendant arrived at Ms. Hoskins's home and knocked on the front door for Hoskins to let him in. Soon after arriving, defendant left, only to come back a short time later. After Hoskins once again let him into her home, defendant told her that he had "caught a body." A few hours later, defendant gave Hoskins a laptop that belonged to the victim and told Hoskins to buy whatever she wanted from Toys R Us.

On June 30, 2015, the victim's car, a 2007 Toyota Corolla, was found near Hoskins's home on the 3100 block of North Stillman Street. Video surveillance recovered from the morning of the murder showed the car travelling onto North Stillman Street at 3:01 A.M. and leaving North Stillman at 3:22 A.M. At 3:28 A.M., video surveillance captured the car entering the parking lot of the Wells Fargo Bank on Broad Street, where the victim's ATM card was used only minutes later. Video surveillance also captured the individual using the victim's card at the ATM machine, although his face was not visible. However, Micshell Hoskins identified the individual depicted in the video surveillance as defendant by his walk, the manner in which he wore his pants, and because he was wearing the same sweatshirt that defendant had been wearing the day before the murder. Jessica Gaymon, defendant's girlfriend at the time of the murder, also identified defendant as the individual using the victim's card at the ATM machine from his clothes, his build, and the manner in which he pulled up his pants.

Trial Court Opinion, 12/21/2017, at 2-4 (citations to the record omitted).

On May 5, 2017, a jury convicted Wilson of one count each of first-degree murder, robbery, burglary, and PIC. The trial court imposed the mandatory sentence of life in prison for the murder charge, with two consecutive terms of ten to twenty years' imprisonment for robbery and burglary, and a consecutive term of two and one half to five years' imprisonment for PIC, resulting in an aggregate sentence of life plus twenty-two and one half to forty five years' imprisonment.

The court denied Wilson's post-sentence motions. This appeal followed.

In his first issue on appeal, Wilson contends the trial court abused its discretion when it admitted photograph number 43 into evidence and showed it to the jury. He describes the photograph as a gruesome photograph of the

victim's face and claims it was unduly prejudicial and inflammatory, outweighing any probative value.

There is a patent problem with Wilson's appeal: the photograph at issue is not in the certified record. It is an appellant's responsibility to ensure that the certified record contains all the items necessary to review his claims. **See Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008). "When a claim is dependent on materials not provided in the certified record, that claim is considered waived." **Commonwealth v. Petroll**, 696 A.2d 817, 836 (Pa. Super. 1997) (citation omitted).

Without the photograph, we cannot conduct a review of Wilson's issue presented on appeal. **See Commonwealth v. Powell**, 956 A.2d 406, 423 (Pa. 2008) (finding claim that an autopsy photograph was unduly prejudicial waived "[b]ecause the record does not contain the photograph appellant refers to, we cannot assess his description and claim"); **Petroll**, 696 A.2d at 836 (finding claim of improperly admitted photographs waived where they were not in the certified record). Therefore, we find Wilson's claim waived.

In his second issue on appeal, Wilson argues the verdict was against the sufficiency of the evidence. Specifically, in his Rule 1925(b) statement, Wilson declares there was no DNA or fingerprints linking him to the crime scene or stolen car and that the cell phone analysis demonstrated that he could have been one-half mile away at the time of the crime. **See** Appellant's Rule 1925(b) Statement, 11/15/2017, at 2. Wilson is not challenging the sufficiency

of the evidence to support any of the specific legal definitions of his convictions. Rather, he is challenging the sufficiency of the evidence to establish that he was person who committed the crimes.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Id**. (citation omitted). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." **Commonwealth v. Kinney**, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Thus, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Bruce**, 916 A.2d at 661 (citation omitted).

The trial court, in its December 21, 2017, opinion, has thoroughly reviewed this claim and disposed of the argument on the merits. We have

reviewed the parties' briefs, the relevant law, the certified record, and the trial court's well-written opinion. The trial court's findings of fact and conclusions of law comprehensively dispose of Wilson's second issue on appeal, with appropriate references to the record and without legal error. *See* Trial Court Opinion, 12/21/17, at 7-11. We therefore adopt the court's reasoning as our own. As it is clear that there is overwhelming evidence in support of the verdict, we find Wilson's second issue without merit.

In Wilson's third issue on appeal, he contends the sentence imposed by the court is cruel and unusual punishment[1] since he has a mandatory life sentence without the possibility of parole. He acknowledges this is a challenge to the discretionary aspects of his sentence. *See* Appellant's Brief, at 13.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

> An appellant challenging the discretionary aspects of his sentence
> must invoke this Court's jurisdiction by satisfying a four-part test:

_____

[1] We note that although Wilson includes the phrase "cruel and unusual punishment" in his statement of the questions involved, his entire analysis is devoid of any constitutional argument, and instead focuses solely on an abuse of discretion in sentencing challenge. *See* Appellant's Brief, at 13-14. Thus, we interpret this issue as only challenging the trial court's discretion and do not review it on a constitutional basis. However, even if we were to address this issue as a constitutional matter we would find it without merit as the horrific facts of this case justify the sentence without offending "evolving standards of decency or a balanced sense of justice." ***Commonwealth v. Ehrsam***, 512 A.2d 1199, 1210 (Pa. Super. 1986).

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Here, Wilson preserved his issues through a timely post-sentence motion and filed a timely appeal. Counsel has included the required Rule 2119(f) statement. Thus, we must determine if Wilson has raised a substantial question for our review.

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. **See Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa. Super. 2005). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id**. (citation omitted); **see also** Pa.R.A.P. 2119(f).

Wilson "must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." **McAfee**, 849 A.2d at 274 (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a

particular fundamental norm underlying the sentencing process." *Tirado*, 870 A.2d at 365.

In his Rule 2119(f) statement, Wilson argues, "Although the trial court stated in its OPINION that all sentences the appellant received were mandatory except for the PIC count, they could have been run concurrent to the Life sentence Without the Possibility of Parole instead of consecutive."

Under 42 Pa.C.S.A. § 9721, the court has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. *Id.*, at 171-172.

After full review of the record before us, we do not find the aggregate sentence is unduly harsh considering the extreme and gruesome nature of the crimes. Therefore, Wilson has failed to raise a substantial question. Even if we were to reach the merits of his argument, we would find no abuse of the court's discretion. Wilson was found guilty of killing the eighty-five year old victim in her home, in the middle of the night, and did so by a combination of multiple stab wounds, strangulation, and blunt trauma to her head, all for a

credit card, a laptop computer, and a car. Further, the court fully explained its reasons on the record for imposing the aggregate sentence.

> Also I do have discretion as to how these sentences should run. I'm going to exercise that discretion and run all of the sentences consecutive to each other. So the aggregate sentence is life in prison plus 22 and a half to 45 years. That is the most that I can give you. So that's what I will give you.
>
> While we all know that no one can actually serve more than their entire life in prison, the reason for this kind of a sentence is to telegraph to the prison, to telegraph to the governor, the Board of Pardons that this was more terrible than the typical first degree murder case and deserving of the maximum sentence possible.

N.T., 5/5/2017, at 157. The trial court clearly considered the totality of Wilson's conduct and the horrible facts of this case and sentenced him accordingly. Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/19